STATE ex rel. CITY OF GREAT FALLS, Respondent, *v.* JEFFRIES, County Treasurer, Appellant.

(No. 6,344.)

(Submitted June 18, 1928. Decided July 21, 1928.)

[270 Pac. 638.]

*Mr. H. R. Eickemeyer, Mr. La Rue Smith, Mr. W. P. Costello, Mr. E. J. Stromnes* and *Messrs Cooper, Stephenson & Hoover,* for Appellant, submitted an original and a reply brief; *Mr. Costello, Mr. Stromnes* and *Mr. W. H. Hoover* argued the cause orally.

*Messrs. Greene & Cockrill,* for Respondent, submitted an original and a supplemental brief; *Mr. H. S. Greene* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Proceedings in mandate by the state, on relation of the city of Great Falls, to compel W. S. Jeffries, as county treasurer of Cascade county, to spread certain installments of special assessments against a certain lot situated within the city. Relator had judgment, and the county treasurer appeals.

On proper showing made by relator in the district court of Cascade county, an alternative writ of mandate was issued to the county treasurer, who made due return thereto. Issue being joined, the matter was submitted to the court upon an

agreed statement of facts by which the following showing was made:

On June 30, 1926, Cascade county received a tax deed to a certain lot in Great Falls, which had been struck off to the county on delinquent tax sale in 1922, for taxes assessed for the year 1921 and never paid. Prior to 1921 the city of Great Falls had lawfully created special improvement districts for paving and lighting the district in which the lot in question was situated, and had duly assessed to this lot its proportionate part of the cost to be paid in yearly installments; it had later established special districts covering the same territory for the maintenance of the lights and maintenance of the boulevard, and duly levied assessments therefor against this lot. The city collected its own taxes, and all assessments of this nature against this lot were paid to the city up to and including the year 1925, but they were permitted to go delinquent for the year 1926, and on these delinquent assessments, while the lot stood in the name of the county, the lot was sold and struck off to the city. The assessments were not paid for the year 1927, and these delinquent assessments were certified by the city treasurer to the county treasurer, who refused to spread them upon the delinquent tax-roll of the county; this proceeding resulted.

On the showing made, the trial court rendered judgment commanding that a peremptory writ of mandate issue, requiring the county treasurer to spread the delinquent assessments. Counsel for the county treasurer asserts that the court erred in rendering judgment in favor of relator, as the lien of the special assessment was extinguished by the tax deed to the county. Counsel for relator assert the contrary, and insist that the court but commanded the county treasurer to perform a duty imposed upon him by law.

The chief question involved in the controversy between the city and county is as to whether such delinquent assessments are liens against, and should be spread against, city property

to which the county has taken tax deeds prior to the certification thereof.

1. Up to 1927 the city treasurer, in cities which provide by ordinance for the collection of their own taxes, had the same power as a county treasurer to sell property for delinquent taxes, and when a payment such as is here considered became delinquent, the city council had the option to declare all payments delinquent, whereupon the whole property could be "sold the same as other property is sold for taxes." (Secs. 5215 and 5251, Rev. Codes 1921, as amended by Chapter 156, Laws of 1925.)

The legislative assembly of 1927, without reference to the statutes above mentioned, dealt with the same subject matter in an Act appearing as Chapter 148, Laws of 1927. Here it provided that, when any tax or special assessment becomes delinquent, no sale shall be made by the city, but the city treasurer shall certify the delinquent taxes or assessments to the county treasurer, or, if the council exercises the option given it to declare the entire assessments remaining unpaid delinquent, the whole amount shall be so certified. This Act then provides that "upon receipt of such certificate the county treasurer shall enter such delinquent taxes and assessments in the delinquent tax list of the county, and the county treasurer in selling property for delinquent taxes must include all such city and town delinquent taxes and assessments, there being but one sale for each piece of property."

The provision last quoted contemplates that there will be delinquent taxes entered against the property on the delinquent tax list of the county, to which the certified city taxes and assessments may be added, and counsel for the county treasurer urge that in the instant case there was no place for such an entry, as no state or county taxes had been assessed against the lot for the year 1927. This fact does not justify the refusal of the treasurer, however, as, if the amount certified is a lien upon the lot, it is immaterial whether there are further delinquent taxes or not. It is conceivable that an owner

may pay the state and county taxes for a certain year, and permit his city taxes and special assessments to go delinquent; but the fact that the first charges were paid would not excuse the treasurer from entering on the delinquent tax list the taxes and assessments actually delinquent.

2. As the property of the county—the lot in question—was ▮▮▮▮ exempt from taxation for the year 1927 (Const., Art. XII, sec. 2; sec. 1998, Rev. Codes 1921), therefore there were no delinquent state and county taxes to spread upon the delinquent tax list, to which delinquent city taxes and assessments could be added. The exemption applies further to city taxes, but it does not follow that the lot was not subject to special improvement taxes.

In *City of Kalispell* v. *School Dist. No. 5,* 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742, it is held that assessments for special municipal improvements, such as are here considered, are not taxes; hence the above constitutional and statutory provisions exempting school property from taxation were held to have no application to such assessments.

In *Ford* v. *Great Falls,* 46 Mont. 292, 127 Pac. 1004, on the other hand, it is held that, although the exemption of United States property is contained in the same constitutional and statutory provisions, as to such property the inhibition excludes such special assessments as well as general taxes; but this holding is based upon the theory that "the federal government is supreme within the purview of the powers granted to it by the Constitution, and cannot be subject to any state," and its property is exempt from any species of taxation, even in the absence of provision therefor.

The theory upon which a municipality may levy assessments for special improvements is that the property charged receives a corresponding physical, material and substantial benefit from the improvement (*Power* v. *City of Helena,* 43 Mont. 336, 36 L. R. A. (n. s.) 39, 116 Pac. 415); that the property assessed will be enhanced in value to the extent of the burden

imposed (*Butte* v. *School District,* 29 Mont. 336, 74 Pac. 869). It is held in the latter case that property used exclusively for school purposes is not enhanced in value by ordinary street sprinkling, and therefore such property is not subject to a special assessment for that purpose. Here the lot in question is not used for county purposes, and the special improvements for which the assessments were levied are well calculated to enhance the value of a lot for building purposes.

While there is conflict of authority as to whether county property generally is liable for special improvement assessments, in the absence of direct statutory authority for the levy (see note, 16 Ann. Cas. 888), on authority of the above school district cases, the property in question would, under the circumstances, be liable.

Nevertheless, in order to justify the judgment rendered, it must appear that the assessment in question was a lien upon the property (*Holmes* v. *Weinheimer,* 66 S. C. 18, 44 S. E. 82), and that such lien had not been discharged before the certification.

As to the first proposition there can be no dispute. By express statutory enactments both general taxes and assessments for special improvements are made liens upon the property assessed (secs. 2154 and 5247, Rev. Codes 1921), but nothing therein contained indicates an intention that either of such liens be paramount to the other.

However, "the legislature has power to provide either that ██ a tax sale shall create a new title, cutting off all prior liens, encumbrances, and interests, or to provide that the tax purchaser shall acquire the interest only of the person in whose name the land was assessed or of the real owner." (3 Cooley on Taxation, 4th ed., 2930, sec. 1492.) By the enactment of section 2215, Revised Codes 1921, providing that a tax deed conveys absolute title "free from all encumbrances, except the lien for taxes which may have attached subsequent to the sale," our legislature adopted the first course. The

tax deed mentioned is not derivative, but creates a new title in the nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation (*McQuity* v. *Doudna*, 101 Iowa, 144, 70 N. W. 99; *Clark* v. *Zaleski*, 253 Ill. 63, 79 N. E. 272; *Frederick* v. *Goodbee*, 120 La. 783, 45 South. 606), and irrespective of whether section 2215, above, impliedly makes the lien for general taxes paramount to that of special assessments (*Woodill & Hulse Electric Co.* v. *Young*, 180 Cal. 667, 5 A. L. R. 1296, 182 Pac. 422), the tax deed extinguishes the lien of the assessment by its express terms, unless such assessments are included in the term "taxes" as used in the section.

Under statutory provisions similar to ours, or which either directly or impliedly declare general taxes to be paramount to special assessments, it has been held in California, Washington, Iowa and Minnesota that such a tax deed operates to discharge all special assessment liens. (*Dougherty* v. *Henarie*, 47 Cal. 9; *McMillan* v. *City of Tacoma*, 26 Wash. 358, 67 Pac. 68; *Tacoma* v. *Fletcher* (1928), 146 Wash. 671, 264 Pac. 997; *Harrington* v. *Valley Savings Bank*, 119 Iowa, 312, 93 N. W. 347; *White* v. *Thomas*, 91 Minn. 395, 98 N. W. 101.) In *Pickell* v. *City of Utica*, 161 App. Div. 1, 146 N. Y. Supp. 31, affirmed in 216 N. Y. 740, 111 N. E. 1098, it is held that a statute which provides that the treasurer's deed shall vest in the purchaser an absolute estate in fee, subject to all claims that the state may have for taxes or other liens or encumbrances, refers only to state and county taxes, and that such purchaser takes the land free from existing liens for city taxes.

After the supreme court of Minnesota had construed its law as above stated, the legislature of that state provided that the lien of a special assessment shall be of equal rank with the lien for general taxes, and that on foreclosure of the state's lien the purchaser takes the land subject to the lien of the special assessment. (Chap. 200, Gen. Laws 1905, construed in *Gould* v. *St. Paul*, 110 Minn. 324, 125 N. W. 273.)

We have no such statutory provision. This is also true of the state of Idaho, where it has been held that a statute similar to our section 2215, above, does not give to a tax deed the effect of discharging liens of special assessments, although the court said that, if the section "were literally construed," it would have that effect. The court, however, reached its conclusion by declaring that the legislative intent evidenced by the use of the terms "taxes," "special taxes," and "special assessments" interchangeably in statutes *in pari materia* with the statute under consideration, was that the term "taxes" should include special assessments. No such legislative intent can be presumed in this state, as the terms mentioned have never been used interchangeably by our legislature; but, on the contrary, that body has always exhibited considerable discrimination in the use of the terms, and, consequently, this court has repeatedly declared that, "though [special] assessments are laid under the taxing power, and are in a * * * sense taxes, * * * they are a peculiar class of taxes, and not within * * * that term as it is usually employed in our Constitution and statutes." (*Billings Sugar Co.* v. *Fish*, 40 Mont. 256, 20 Ann. Cas. 264, 26 L. R. A. (n. s.) 973, 106 Pac. 565; *In re Valley Center Drain Dist.*, 64 Mont. 545, 211 Pac. 218; *Thaanum* v. *Bynum Irr. Dist.*, 72 Mont. 221, 232 Pac. 528.)

Counsel for the city urge that these decisions refer only to the uniformity clause of the Constitution, and that, in all other respects, special assessments should be treated as taxes, as the term is ordinarily used. Cases are cited from certain states supporting the argument, but we cannot adopt this reasoning. We have already shown that the constitutional and statutory provisions exempting certain property from taxation do not constitute an exemption of that property from assessments for special improvements constituting a benefit to or betterment of the property assessed. Again we have declared that section 2152, Revised Codes of 1921, now re-

lied upon by counsel for the city, providing that every tax has the effect of a judgment and every lien created "by this title" has the force and effect of an execution, applies only to general taxes, since the section is contained in the title to the Code dealing exclusively with the assessment, levy and collection of taxes for the support of the state and county governments. (*State ex rel. Spokane & Eastern Trust Co.* v. *Nicholson,* 74 Mont. 346, 240 Pac. 837.)

"Although possessing many points of similarity, special assessments and taxes are inherently different, and the same rule of construction, where the words are used in statutes, will not be indiscriminately applied" (*State* v. *Furstenau,* 20 N. D. 540, 129 N. W. 81); so "whether the term 'tax,' when used in a statute, * * * includes an imposition for special improvements, must be determined by reference to the intention of the legislature, as that intention may be disclosed by the context, the purpose sought to be accomplished, the general scope of the Act and related Acts" (*Thomas* v. *City of Missoula,* 70 Mont. 478, 226 Pac. 213).

Applying the above tests to section 2215, above, it cannot be said that the legislature intended to include special assessments in the term "taxes," as, like section 2152, above, this section is a part of the title dealing only with general taxes, originally enacted in 1891 (page 104, sec. 82, Laws of 1891), and neither the Act of 1913, of which section 5247, above, is a part, nor the original Act of 1895, providing for the creation of special improvement districts, can be said to have been a "related act" at the time of its passage.

3. Counsel for the city contend, however, that, if this is so, the situation was changed by the enactment of section 5247, above, which, in addition to creating a lien, provides that such lien "can only be extinguished by payment of such assessment with all penalties, costs and interest."

Counsel's argument is not entirely clear, but we assume their contention is that by the enactment of this section, subsequent to the enactment of section 2215, above, the latter section was

amended by implication, and made the lien of special assessments paramount to that of general taxes. If the intention of the legislature was that such a lien could only be discharged by payment, it is paramount to the lien of general taxes, which is discharged by a sale of the property, while the undischarged lien for special assessments would still hold until paid and could not be foreclosed. Some such a provision was considered in *Woodill & Hulse Electric Co.* v. *Young*, above, and it was there held that "the correct construction of the statute is that by the language quoted nothing more was intended than to declare the general proposition that a street assessment lien should be a first lien on the property," but that it did not prevent the discharge of such a lien by sale of the property on foreclosure of a like lien.

Section 5247 was enacted as section 23, Chapter 89, Laws of 1913; section 27 of the Act, carried forward as section 5251, Revised Codes of 1921, and later amended by Chapter 156 of the Laws of 1925, as above noted, gave the cities the right to foreclose the lien of special assessments by sale of the property in the same manner as property is sold for other taxes, thus extinguishing the lien, and thus negativing the idea that the legislature intended in the same Act to declare that such a lien could only be extinguished by payment of the tax and continued until such payment was made, regardless of the provisions of section 2215, above.

As the Act provided for interest on assessments under certain circumstances, and the incurring of costs and penalties, section 5247 but declares that the lien cannot be discharged by the mere payment of the assessment, but can only be discharged if payment is made by paying all of the charges against the property; in view of the other provisions of the Act of which it is a part, it can be given no greater effect than this, or, in addition, as suggested by counsel for the county, it may bar the running of the statute of limitations against the collection of the assessment.

The provision of section 2215, therefore, is imperative that the tax deed in question extinguishes the lien of special improvement assessments, as it does all contract liens, and even prior tax liens. (*California Co.* v. *Weis*, 118 Cal. 489, 50 Pac. 697.) As was said by the supreme court of Washington, in *Pennsylvania Co.* v. *Tacoma,* 36 Wash. 656, 79 Pac. 306: "The fact that the local improvements assessment is payable in installments, and that some or all of the installments have not matured, can make no possible difference. The local improvement assessment, due or not due, is a charge against the property which will not be permitted to impede or interfere with the collection of state and county taxes. This rule may operate harshly against the municipalities of the state, where assessments for local improvements are made payable in installments through a long series of years, but, if so, the remedy lies with the legislature, and not with this court."

For the reasons stated the judgment is reversed and the cause remanded to the district court of Cascade county, with direction to dismiss the proceeding.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied October 1, 1928.