STANLEY, Appellant, *v.* JEFFRIES, County Treasurer, Respondent.

(No. 6,595.)

STANLEY, Appellant, *v.* CITY OF GREAT FALLS et al., Respondents.

(No. 6,596.)

(Submitted November 13, 1929. Decided November 29, 1929.)

[284 Pac. 134.]

116

Messrs. *Maddox & Church,* for Appellant, submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover* and *Mr. H. R. Eicke-meyer,* for Respondents, submitted a brief; *Mr. W. H. Hoover,* argued the cause orally.

122

*Mr. William T. Pigott,. Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Howard H. Stanley, appeals from a judgment of dismissal, after demurrer sustained to his complaint, in each of two actions commenced by him as a taxpayer of the city of Great Falls.

In his first action, W. S. Jeffries, as county treasurer of Cascade county, is made defendant, and therein plaintiff sought to enjoin that officer from collecting a tax levied under City Ordinance No. 626 of the city of Great Falls, enacted pursuant to the provisions of Chapter 24 of the Session Laws of 1929.

The second action was brought against the city of Great Falls, its clerk and treasurer, to enjoin the holding of an election in conformity with certain provisions of Chapter 24, above.

The basis of each action is the alleged unconstitutionality of the statute mentioned, and this question was duly presented to the trial court by demurrer to the complaint in each action. On the sustaining of the demurrers, plaintiff refused to plead further, and suffered judgment of dismissal to be entered. As the one question is presented in the two appeals, they were briefed and argued jointly, and will be so disposed of here.

Under our statutory provisions with relation to special improvements in cities and towns, any special assessment made and levied to defray the cost and expenses of special improvements constitutes a lien upon all property included in an improvement district (sec. 5247, Rev. Codes 1921), but, under the provisions of section 2215, Id., such a lien is extinguished by the issuance of a tax deed on sale of the property for delinquent taxes (*State ex rel. City of Great Falls* v. *Jeffries, County Treasurer,* 83 Mont. 111, 270 Pac. 638).

As the cost of an improvement is ordinarily apportioned to the several lots according to area or front footage on the improvement (sec. 5238, Rev. Codes 1921), it will be seen that, by reason of delinquency of property owners in paying assessments, a certain percentage of the principal and interest on special improvement bonds may never be paid. In order to meet this situation, the legislature in 1929 enacted Chapter 24, Laws of 1929, which provides as follows:

"Section 1. The City or Town Council or Commission of any City or Town which has heretofore created, or may hereafter create, any special improvement district or districts for any purpose, may in its discretion, as to such district or districts heretofore created, and shall, as to such district or districts hereafter created, in order to secure prompt payment of any special improvement district bonds or warrants issued in payment of improvements made therein, and the interest thereon as it becomes due, create, establish, and maintain by ordinance a Fund to be known and designated as 'Special Improvement District Revolving Fund.'

"Section 2. For the purpose of providing funds for such Revolving Fund the City or Town Council (1) may in its

discretion, from time to time, transfer to the Revolving Fund from the General Fund of the City or Town such amount or amounts as may be deemed necessary, which amount or amounts so transferred shall be deemed and considered, and shall be, loans from such General Fund to the Revolving Fund; and (2) shall, in addition to such transfer or transfers from the General Fund, or in lieu thereof, levy and collect for such Revolving Fund such a tax, hereby declared to be for a public purpose, on all the taxable property in such City or Town as shall be necessary to meet the financial requirements of such Fund, such levy, together with such transfer, not to exceed in any one year five per centum (5%) of the principal amount of the then outstanding Special Improvement District bonds and warrants.

"Section 3. Whenever any Special Improvement District bond or warrant, or any interest thereon, shall be, at the time of the passage of this Act, or shall thereafter become due and payable, and there shall then be either no money or not sufficient money in the appropriate district fund with which to pay the same, an amount sufficient to make up the deficiency may, by order of the Council, be loaned by the Revolving Fund to such district fund, and thereupon such bond or warrant * * * shall be paid from the money so loaned * * * provided, however, that the above provision[s] * * * shall not apply to any district * * * heretofore created, unless and until, at an election * * * a majority of the legal voters who shall be * * * freeholders of property situated in the City or Town, shall authorize the City or Town Council to proceed thereunder, such election to be called and conducted in the manner and under such regulations as the Council may provide.

"Section 4. Whenever any loan is made to any Special Improvement District Fund from the Revolving Fund, the Revolving Fund shall have a lien therefor on all unpaid assessments and installments of assessments on such district, whether delinquent or not, and on all moneys thereafter coming into such district fund, to the amount of such loan, together with

interest; * * * and whenever there shall be moneys in such district fund which are not required for payment of any bond or warrant * * * or * * * interest * * * so much of such moneys as may be necessary to pay such loan shall, by order of the Council be transferred to the Revolving Fund; and after all the bonds and warrants issued on any Special Improvement District have been fully paid, all moneys remaining in such district Fund shall by order of the Council be transferred to and become part of the Revolving Fund.

"Section 5. Whenever there is in the Revolving Fund an amount in excess of the amount which the Council deems necessary for payment or redemption of maturing bonds or warrants or interest thereon, the Council may

"(1) by vote of all of its members at a meeting called for that purpose, order such excess or any part thereof transferred to the General Fund of such City or Town, or

"(2) use such excess or any part thereof for the purchase of property at sales for delinquent taxes or assessments, or both, or which may have been struck off or sold to the County * * * and against which property there then be any unpaid assessment for special improvements on account whereof there are outstanding special improvement district bonds or warrants of the City or Town.

"The Council may sell any tax certificates issued on any such sale or sales. After acquiring title * * * the City or Town may lease such property, or sell the same at public or private sale, * * * or otherwise dispose thereof. * * * All proceeds * * * shall belong to and be paid into the Revolving Fund, and be subject to transfer in whole or in part to the General Fund. * * * "

Pursuant to the provisions of this Act, in August, 1929, the city council of Great Falls, by Ordinance No. 626, levied and assessed upon all taxable property within the limits of that city a tax of one and one-half mills on each dollar of the assessed valuation, in addition to the general levy for city purposes, which tax has been duly spread, and, unless he is restrained by the court, the treasurer will collect the amount

of such tax from the property holders, and the council will thereafter transfer such amount to the special improvement district revolving fund. In *Stanley* v. *Jeffries, County Treasurer,* the plaintiff, as a property owner within the city of Great Falls, seeks to enjoin such collection.

In *Stanley* v. *City of Great Falls,* the same plaintiff seeks to enjoin the holding of a city election by which the council is attempting to secure authorization, pursuant to section 3 of Chapter 24, to apply the provisions of the law to improvement districts created in that city prior to the enactment of the law. The complaint in this action alleges that the city had, before the enactment of the law, created certain special improvement districts serving only a portion of the city, and had theretofore issued bonds and warrants in payment of the improvements made, due at the time the Act was passed, and which cannot be paid because of the delinquency of property holders, whose property has been sold to third persons for county taxes, and for which tax deeds have been issued, and thus the lien of the city for delinquent assessments has been lost and extinguished.

1. **Stanley** v. **Jeffries, County Treasurer,** involving the constitutionality of Chapter 24, Laws of 1929, as applying to the relief of special improvement districts organized after the passage of the Act:

Here the contention of the plaintiff is (a) that the Act authorizes a loan of city funds and credit in aid of such districts for the benefit of the holders of bonds and warrants of the district, and is, in effect, a donation to establish a guaranty fund for the protection of individual holders of such bonds or warrants, enabling them to enjoy a privilege and security not shared by the holders of other classes of city bonds and warrants, or other creditors of the city, in violation of section 1, Article XIII of our Constitution; (b) that it denies to the plaintiff the equal protection of the law, in violation of section 1, Amendments, Article XIV of the federal Constitution; (c) that it is a special law and offends against section 26, Article V of the state Constitution, in that it does

not provide protection by general law for all holders of all classes of municipal bonds and warrants which are in default; and (d) that it is in effect a tax for a private purpose, for the benefit of the holders of special improvement district bonds and warrants, in violation of section 11, Article XII of our Constitution.

Only (a) and (d) of these contentions require serious consideration.

It is clear that, since the plaintiff is accorded the same protection as all other taxpayers of the city of Great Falls, and the Act applies to all cities and towns wherein special improvement districts exist, the Act is violative of neither section 1, Amendments, Article XIV, U. S. Constitution, nor section 26, Article V, of the state Constitution. (*Hill* v. *Rae*, 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826; *Trumper* v. *School District*, 55 Mont. 90, 173 Pac. 946; *Lewis and Clark County* v. *Industrial Acc. Board*, 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.) No other city bonds and warrants stand in the precarious situation of these special improvement district bonds and warrants, as this is the only class of bonds and warrants which does not have the credit of the city back of them.

Section 1, Article XIII, of the Constitution, declares that "neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation; * * * " while section 11, Article XII, provides that "taxes shall be levied and collected by general laws and for public purposes only. * * * "

As declared above, the tax here under consideration was levied, and the proposed collection will be under "general laws," and whether or not the Act in question is violative of either of the quoted provisions of the Constitution depends upon the nature of the purpose for which the tax is intended. Is it intended to aid the holders of district bonds and warrants, or to serve a public purpose by enabling cities and

towns to erect needed public improvements through the instrumentality of the special improvement district law?

Section 1, Article XIII, of the Constitution was intended to prevent the extension of public aid to private enterprise or that of a semi-public nature, yet having for its purpose gain to the individual, association or corporation building it up, and the inhibitions therein contained do not apply to such enactments as are intended for the relief of the poor (*State ex rel. Cryderman* v. *Wienrich,* 54 Mont. 390, 170 Pac. 942), the Workmen's Compensation Act, Laws 1915, Chapter 96 (*Lewis and Clark County* v. *Industrial Acc. Board,* supra), or the War Defense Act, Laws of 1918, Ex. Sess., Chapter 21 (*State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, Ann. Cas. 1918D, 1101, 171 Pac. 755, 757), as in each of these instances the purpose to be served was found to be a public one, although private individuals might profit thereby. The mere fact that the money raised will go to individuals will not condemn the Act in question, since the test is not as to who receives the money, but, Is the purpose for which it is to be expended a public purpose? (*City of Wilmington* v. *Wolcott,* 12 Del. Ch. 379, 112 Atl. 703; *Carman* v. *Hickman County,* 185 Ky. 630, 215 S. W. 408; *Payne* v. *Jones,* 47 S. D. 488, 199 N. W. 472; *Denver & Rio Grande Ry. Co.* v. *Grand County,* 51 Utah, 294, 3 A. L. R. 1224, 170 Pac. 74.)

Thus the two quoted constitutional provisions are directed toward the same prohibited action, and, if the Act under consideration is not violative of the one, it is not violative of the other.

The term "public purpose," as used in the Constitution, is synonymous with governmental purpose. (*State ex rel. Mills* v. *Dixon,* 66 Mont. 76, 213 Pac. 227.) An essential to a "public purpose" is that it shall affect the inhabitants as a community and not merely as individuals. (*Stevenson* v. *Port of Portland,* 82 Or. 576, 162 Pac. 509.)

Whether a tax is levied for a public or private purpose is to be determined by the course or usage of the government, the object for which such a tax has been customarily and by long

course of legislation levied, and what objects have been considered necessary to the proper support and the proper use of the government, "and whatever lawfully pertains to this purpose and is sanctioned by time and the acquiescence of the people may be said to be for a 'public purpose.' " (*Hagler* v. *Small,* 307 Ill. 460, 138 N. E. 849.) The true test is whether the work to be done is essentially public and for the general good of the inhabitants, satisfying their needs or contributing to their convenience, rather than merely for gain or for private objects. (*City of Tombstone* v. *Macia,* 30 Ariz. 218, 46 A. L. R. 828, 245 Pac. 677.)

Here, it is true, the holders of bonds and warrants of any ██ city in this state, issued for the payment of special improvements made under the special improvement district law (Chap. 56, Part IV (Pol. Code), Rev. Codes 1921), will profit by the provisions of Chapter 24, above, as compliance by the city with its provisions will, in part at least, do away with losses by reason of the failure of a certain per cent of the property owners to pay the special assessments, and consequent loss of liens on property, as above pointed out, for which, without this Act, there was no method of recoupment. But the work to be done within such improvement districts as are hereafter created in cities is essentially public work, and the purpose of providing for such work necessarily a public purpose.

Section 5225, Revised Codes of 1921, within Chapter 56 above, vests in a city council jurisdiction over public streets, alleys, places and courts, and the power to acquire rights of way therefor, "and to order to be done any of the work mentioned in this chapter under the proceedings hereinafter described."

Section 5226, Id., provides that "whenever the public interest or convenience may require, the city council is hereby authorized and empowered to create special improvement districts. * * * " Then follows a long list of purely public improvements which may be erected by the creation of such a district.

Under the special improvement district law, the cost of the work may be assessed to bordering property because of supposed special benefit, and "whenever the contemplated work or improvement, in the opinion of the city council, is of more than local or ordinary public benefit * * * " and under certain other conditions, the council may spread the assessments over an extended district. (Sec. 5228, Id.)

But the laying out and improvement of streets, alleys, sewers and the like is essentially a public purpose benefiting the entire community, although the work is done in but a portion of the city, and, in the absence of any legislative restriction, each portion of the city might be thus improved at the general public expense, and no taxpayer could be heard to complain thereof. In other words, in order to erect any public improvement by the creation of special improvement districts, both general benefits to the municipality and special benefits to particular property must be conferred—the special benefit to adjacent property is but incidental to the general benefit to the city; it could not otherwise lawfully be created.

When, therefore, the legislature provided that, as to special improvement districts created in the future, a fund shall be created to insure the prompt payment of bonds and warrants issued in payment of such improvements, it but modified the special improvement district law to impose upon the general public, within the municipality, a conditional obligation to pay a small portion of the cost of erecting the public improvement, whereas it might have, lawfully, imposed a much greater burden upon the municipality.

It is readily discernible that, under the law as it existed at the time this Act was passed, the value of district bonds and warrants was problematical, and their salability greatly impaired, and the public credit and public good necessitated some action to remedy the defects in the existing law.

As said of the Act under consideration in *State ex rel. Campbell* v. *Stewart*, above: "This is primarily not an Act 'to authorize' " a loan, gift, or donation to " 'individuals, associa-

tions or corporations'; on the contrary, if it is any of these things, it is so only secondarily or incidentally."

That the purchasers of bonds or warrants shall, in the future, have greater security for the payment thereof than they have had in the past, is but incidental to the public purpose of the Act before us, and does not militate against its validity. A somewhat similar provision for stabilizing special improvement district bonds was recently upheld in the state of Washington. (*Comfort* v. *City of Tacoma*, 142 Wash. 249, 252 Pac. 929.) *Bank of Commerce* v. *Huddleston*, 172 Ark. 999, 50 A. L. R. 1202, 291 S. W. 422, also sustains our position. It is true that the public work considered therein was coextensive with the city, but, as all public works constructed within special improvement districts must necessarily benefit the entire city, this fact does not lessen the force of the decision as an authority here.

We are concerned only with the legality, and not at all with the policy or reasonableness, of a legislative enactment, and, in the absence of a constitutional limitation, the legislature has plenary power to levy taxes for public purposes. The question as to whether or not this enactment will trench upon the constitutional limitation of indebtedness of the city is not here presented.

Finding no constitutional prohibition against such an Act as this in its application to improvement districts created after the passage of the Act, the judgment in *Stanley* v. *Jeffries* is affirmed.

2. **Stanley v. City of Great Falls:** In the second case we are called upon to consider the constitutionality of that portion of section 3 of Chapter 24, Laws of 1929, which declares that "the above provision [provisions?] of sections 1, 2, and 3 of this Act shall not apply to any district or districts heretofore created, unless and until, at an election * * * a majority of the legal voters who shall be taxpaying free-holders of property situated in the city * * * shall authorize the * * * council to proceed thereunder."

The wording of this provision demonstrates that the legislature was mindful of the provisions of section 13, Article XV, of the Constitution against which plaintiff asserts the Act offends. This section declares that "the legislative assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already passed."

Herein the legislature did not attempt to impose a liability upon the people with respect to past transactions, but merely gave them the option to impose such a burden upon themselves if they saw fit, which, in so far as this inhibition of the Constitution is concerned, they may do. (*In re Pomeroy,* 51 Mont. 119, 151 Pac. 333.)

The Act does not offend against the prohibition contained in section 13 of Article XV of the Constitution.

However, what is the purpose of the Act in so far as it deals with special improvement district bonds and warrants issued prior to the date thereof? Such bonds and warrants were, it is true, issued for the purpose of constructing a public work, and consequently issued for a public purpose, but the transaction has been completed and the bonds and warrants accepted in full settlement thereof; they have passed into the hands of individuals or corporations. With respect to these, there is no duty or obligation resting upon the city other than to enforce and obey the provisions of the special improvement district laws; if this is done, and still a loss is suffered by reason of deficiencies in that law, the loss falls upon the holders of the bonds and warrants, and not upon the city.

It must always be conceded that the proper authority to determine what should and what should not constitute a public burden is the legislative department of the state, and what is for the public good and what are public purposes are questions which the legislature must decide upon its own judgment, and in respect to which it is vested with a large discretion with

which courts are loath to interfere; but, where there is an absence of public liability and public interest, and the action of the legislature is clearly evasive of the constitutional limitation, the mere fiat of the legislature that an Act comes within its constitutional power is not binding, and it is the duty of the court to declare the Act void, regardless of the declaration of the legislature. (Cooley on Constitutional Limitations, 6th ed., 588–611; *State ex rel. Goodman* v. *Stewart,* 57 Mont. 144, 187 Pac. 641; *State ex rel. Mills* v. *Dixon,* above.)

Here the situation discussed in *Stanley* v. *Jeffries* is reversed. The purpose of. the Act, in so far as it authorizes the assumption of liability for losses suffered by the holders of bonds and warrants issued prior to the passage of the Act, must be held to be reimbursement of those holders for such losses, and, although it is urged that such action would tend to rehabilitate the city's credit, such a purpose, if it existed, must be held to be the secondary or incidental purpose. It is not even clear that action was necessary for such secondary purpose. Proposing purchasers of bonds and warrants look only to the present condition of the law, and therefrom determine whether or not such bonds and warrants furnish a reasonably safe investment; it can hardly be presumed that the fact that other investors have suffered loss under a different condition of the law would deter proposing investors from purchasing bonds and warrants in the future.

As it clearly appears that the portion of the Act now under consideration authorizes the levy and collection of taxes for a private purpose, it is violative of section 11, Article XII, of the Constitution, and cannot stand.

The judgment in *Stanley* v. *City of Great Falls* is reversed and the cause remanded to the district court of Cascade county, with direction to issue the writ prayed for.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES FORD and ANGSTMAN, and HONORABLE W. H. POORMAN, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.