## LUMBERMEN'S TRUST CO. v. TOWN OF RYEGATE.

### No. 224.

District Court, D. Montana.

May 14, 1931.

Order July 7, 1931.

Stewart & Brown, of Helena, Mont., for plaintiff.

Johnston, Coleman & Jameson, of Billings, Mont., for defendant.

PRAY, District Judge.

The purpose of this action is to establish a liability against the town of Ryegate, Golden Valley county, Mont., on an implied contract for the balance due on the construction of a water supply system, which otherwise would have been paid from bonds issued by a special improvement district of that town, had the entire issue not been declared illegal and void, after the water supply system had been fully constructed. The facts appear herein and in an agreed statement and testimony taken at the trial, which was before the court without a jury, according to written stipulation of counsel for the respective parties.

Proceedings were begun by the town council for the creation of the special improvement district in 1919, followed by the usual bond issue and commencement of work by the contractor, the Security Bridge Company, the precedessor of plaintiff. It appears from the resolutions adopted by the town that the character of the improvements were to be "the construction of pipes, hydrants, and hose connections for irrigating appliances and fire protection." That pursuant thereto the improvements actually installed consisted of waterworks and a water system of reservoirs, pumping plant, mains, and fire hydrants, for the furnishing of water to the inhabitants of the town. To provide for the payment of the improvements, the town council assessed each parcel of land within the district for that part of the entire cost which its area bore to the entire area of the improvement district, exclusive of streets and alleys. That the assessment so made against the property in said district was for the purpose of retiring the bonds of the district in the amount of $45,602.42.

No notice was ever given to the property owners in the district of the letting of the contract for the construction of the improvements. The cost of improvements which the town attempted to assess against the property in the district was the sum above mentioned, whereas the estimated cost was only $28,350. Within the time allowed after letting of contract protests and objections were filed.

Plaintiff claims that under section 6 of article 13 of the Constitution of the State of Montana, and subdivision 64 of section 5039 of the Revised Codes of Montana of 1921, the town of Ryegate had general authority to procure a water supply and construct a complete waterworks system, and therefore contends that since the city had general power and authority to do the work and construct the improvements embraced in the special improvement district in question, although it had no authority to resort to the special improvement district plan to make the improvements and although bonds used in payment of the work were illegal and void, nevertheless, the town having the general power to make such improvements, and having received and retained the benefit of the improvements and the construction thereof, it is liable as upon an implied contract, and the delivery of void warrants did not amount to payment, and also that a contract may be illegal and void, yet if the corporation has the general power to do the thing agreed upon, but has done it in an irregular manner, or even in violation of some common-law rule, or statutory inhibition, yet if it has received the benefit and the contract was not immoral, unjust, or inequitable, it is liable upon the implied contract.

The defendant states the proposition of law as follows: "The general question presented by this action is whether or not a city or town in Montana is liable upon any theory for the debt represented or evidenced by the bonds of a special improvement district which by their terms are made payable from a special fund derived from special assessments upon and against the property embraced within that district." If this question should receive an affirmative answer, then the further question arises whether the town of Ryegate can be held liable in this instance in view of section 6 of article 13 of the Constitution of Montana. In commenting on the foregoing statement of the issue of law involved, plaintiff contends that the town nev-

er acquired jurisdiction to create a special improvement district and that the bonds issued were by the court declared to be invalid, after the contract, for which the bonds were delivered, had been fully performed. Not all the bonds representing the entire consideration for the works were declared invalid; only those of the special improvement district. Fifteen thousand dollars of the consideration was paid through an issue of the general bonds of the town, and the remainder by the issue of special improvement district bonds.

It seems clear that because of the constitutional inhibition the town was unable lawfully to contract for the installation of a water system without the approval of the taxpayers. It found that it could lawfully issue $15,000 in bonds as a direct obligation and no more; consequently the town council by appropriate resolution and with apparent authority undertook the establishment of a special improvement district for the purpose of creating a bonded indebtedness against the property lying within the boundaries of such district to raise the money necessary to install the works hereinbefore described which were to be located in the special improvement district. It appears that the improvement district embraced the greater part of the town including the principal business and residental sections. By resorting to these two methods the town secured a waterworks system, such as was provided by contract, and has used the same for several years without paying for it, except the payment of $15,000 in bonds of the town. The town apparently set about to accomplish in a lawful manner indirectly what it could not lawfully do directly without an election and favorable majority vote. Unquestionably there is a general obligation to do justice resting upon cities as well as upon natural persons, and while plaintiff cannot now recover upon the contract, the question remains: Can it lawfully recover from the town as on an implied contract for money had and received? Can the town be compelled to assume as a general obligation the indebtedness contracted with the special improvement district and secured by an issue of bonds upon property lying wholly within the district? Irrespective of what the general result has been here, does the law permit the plaintiff to recover from the town when it or its predecessor accepted the bonds of the special improvement district, enforceable against the property of the district, for the amount now claimed from the town itself? Plaintiff claims to have no recourse against the property of the district because of a decision of the state court, from which no appeal was taken, declaring the bonds of the district illegal and void. According to the record, counsel representing the bondholders took part in the trial of the issues there involved.

Whether it be held, as contended by plaintiff, that there was no grant of power under the statute conferred upon the municipality to install and pay for a waterworks system, as provided in chapter 56 of part 4 (sections 5225–5277), Revised Codes of Montana (1921), or not, there is certainly enough in the language of that chapter to lead the members of the average town council to believe that they had the authority to create a special improvement district for the purpose of installing the aforesaid waterworks within the district and paying for it by the issuance of bonds of that district. The Security Bridge Company and plaintiff could have subjected these bonds and proceedings to the closest scrutiny of counsel before accepting them, and could have rejected them if they were issued without authority of law, or if they found that their invalidity consisted in a failure to comply with the requirements of a valid statute.

If in this instance the proper officers had been authorized to enter into the contract on the part of the town, after submitting the question to a vote of the taxpayers as required by law and receiving favorable action thereon, there would be no question whatever as to the liability of the town, irrespective of any mere oversight or irregularity in conducting the proceedings.

Subdivision 64 of section 5039 of the Revised Codes of Montana (1921) provides that a city or town council shall have power to contract an indebtedness on behalf of the city or town for the construction of a waterworks system supplying the city or town after the proposition has been submitted to the vote of the taxpayers affected thereby and the majority vote cast in favor of the improvement. The other method is by the creation of a special improvement district under chapter 56 of part 4 of the same Code. This was the plan adopted by the town for the balance of the necessary funds, and it failed; but its failure was not discovered until after the receipt of the money and the construction of the system. Section 6 of article 13 of the Constitution of the State of Montana provides a debt limit for cities and towns. Ryegate had exceeded its constitutional limit of indebtedness.

From the authorities and statutes cited by plaintiff it seems that a complete water supply system for an entire city or town cannot be constructed under the special improvement district plan embracing only a part of the city or town and charging up the total cost to the property included therein, and benefited thereby, for such an arrangement manifestly would be an injustice to the residents of the district, but where the cost of a certain part of the works has been accurately figured in correct proportion to the cost of the whole system and constructed and paid for under the special improvement plan, an entirely different question is presented and one which does not seem to conflict with the general payment plan for a water system by the other method. But here a complete system was not attempted to be constructed at the expense of the taxpayers of this particular improvement district. The town itself became directly liable for part of the indebtedness; it assumed apparently as much of the debt as could be done without exceeding the constitutional limit and without being obliged to go to the expense of submitting the question to a vote of the taxpayers. Surely the "waterworks, water mains and extension of water mains" along the lots, blocks, and parcels of land in the special improvement district as provided in said chapter 56 may be a benefit to the property and persons served—a special benefit to the property and a general benefit to the town at large. Plaintiff attempts to make a distinction between "waterworks" and "water system," but there appears to be no authority for it in the laws and decisions of Montana. On the question of a recovery for money had and received many cases have been cited; but one, that of Rogers v. City of Omaha, 75 Neb. 318, 107 N. W. 212, 214, 215, seems to have been relied upon as a sustaining authority by both sides. There the court held: "There is a clear distinction between contracts outside of the powers conferred upon municipal corporations, and contracts within the general scope of the powers conferred, but which have been irregularly exercised. Contracts falling entirely outside of the powers delegated to the corporation are absolutely null and void, and no right of action against the corporation can be founded upon them." Reference is then made to the rule as stated by Dillon on Municipal Corporations: "A municipal corporation, as against persons who have dealt with it in good faith and parted with value for its benefit, cannot set up mere irregularities in the exercise of power conferred, as, for example, its failure to make publication in all of the required newspapers of a resolution involving the expenditure of moneys." But in the instant case we are not dealing with a mere irregularity but with an express constitutional requirement in the following language: "No city, town, township or school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three (3) per centum of the value of the taxable property therein * * * and all bonds or obligations in excess of such amount given by or on behalf of such city, town, township or school district shall be void," unless the legislative assembly extend the debt limit mentioned by authorizing municipalities to submit the question to a vote of the taxpayers affected thereby for the purpose of constructing a sewerage system or to procure a supply of water. Section 6, article 13 of Constitution of Montana. Counsel for plaintiff is undoubtedly correct in asserting that when acting in its proprietary capacity a city or town will be more readily held liable than in its governmental, but that is far from admitting that it would be liable here for that reason unless it appeared that an irregularity in procedure was involved instead of the violation of a constitutional provision. Had the bonds of the improvement district been held valid, no good reason appears why payment of both issues could not have been made under the present laws of Montana relating to general taxes and assessments in special improvement districts.

The Supreme Court of Washington, in Comfort v. Tacoma, 142 Wash. 251, 252 P. 929, said, in speaking of a similar issue of bonds by a special improvement district: "Countless numbers of these bonds were purchased by persons unskilled in such matters who failed to grasp the fact that the obligations which the bonds represented were not legally those of the city, but were restricted to the particular fund created by the assessment * * * the creation of a special fund to which the bondholders are restricted in itself negatives the idea of a general indebtedness upon the part of the city."

The leading case relied upon in Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 621, that of Moore v. Mayor, 73 N. Y. 238, 29 Am. Rep. 134, seems to be easily distinguishable from the facts here; there the action was to recover a balance due upon a contract made by the corporation of the City of New York, by the Croton Aqueduct Board

and Robert Jardine, plaintiff's assignor, for the paving of Eighth avenue, from Forty-Second to Fifty-Eighth streets. "The contract was entered into, under the terms of, and pursuant to a resolution adopted by the boards of councilmen and aldermen of the city and approved by the mayor [of the city]. * * * This resolution provided for the improvement at the expense of the city, to be reimbursed by an assessment upon the property benefited."

One dealing with the agents of a municipality is bound to know the limts of its power. When the town of Ryegate issued $15,000 in general bonds as a direct obligation of the town, those dealing therewith well knew, or should have known, that the city could contract no greater indebtedness at that time for the purpose in view, and because of that fact resorted to the special improvement plan to raise the funds required to pay for that part of the works to be constructed in that particular district.

The funds here were used for a corporate purpose—a special purpose as to the improvement district and a general corporate purpose as to the town at large. Would that of itself create a legal obligation on the part of the town to pay the debt in event of failure of the district plan? With no such constitutional inhibition, it was within the general powers of the town to construct a water supply; but in the instant case no such general power existed on the part of the town until conferred upon it by the taxpayers of the town. To begin with, it had no power at all, and in order to acquire it, an election must be held to determine whether such power should or should not be granted.

The court held in Stanley v. City of Great Falls, 86 Mont. 114, 284 P. 134, 140, 70 A. L. R. 166: "Proposing purchasers of bonds and warrants look only to the present condition of the law, and therefrom determine whether or not such bonds and warrants furnish a reasonably safe investment." The responsibility is upon the purchasers of such bonds to know the law and to see that it has been complied with before investing their funds; and well may they purchase with care when they read the language of the Supreme Court of Montana in respect to them: "No other city bonds and warrants stand in the precarious situation of these special improvement district bonds and warrants, as this is the only class of bonds and warrants which does not have the credit of the city back of them." Stanley v. Jeffries, County Treas-

urer, 86 Mont. 128, 284 P. 134, 137, 70 A. L. R. 166. And again from the same source: "Section 5226, Id., provides that 'whenever the public interest or convenience may require, the city council is hereby authorized and empowered to create special improvement districts. * * *' Then follows a long list of purely public improvements which may be erected by the creation of such a district. Under the special improvement district law, the cost of the work may be assessed to bordering property because of supposed special benefit, and 'whenever the contemplated work or improvement, in the opinion of the city council, is of more than local or ordinary public benefit * * *' and under certain other conditions, the council may spread the assessments over an extended district. Section 5228, Id. * * * When, therefore, the Legislature provided that, as to special improvement districts created in the future, a fund shall be created to insure the prompt payment of bonds and warrants issued in payment of such improvements, it but modified the special improvement district law to impose upon the general public, within the municipality, a conditional obligation to pay a small portion of the cost of erecting the public improvement, whereas it might have, lawfully, imposed a much greater burden upon the municipality. It is readily discernible that, under the law as it existed at the time this act was passed, the value of district bonds and warrants was problematical, and their salability greatly impaired, and the public credit and public good necessitated some action to remedy the defects in the existing law. * * * We are concerned only with the legality, and not at all with the policy or reasonableness, of a legislative enactment, and, in the absence of a constitutional limitation, the Legislature has plenary power to levy taxes for public purposes. The question as to whether or not this enactment will trench upon the constitutional limitation of indebtedness of the city is not here presented. Finding no constitutional prohibition against such an act as this in its application to improvement districts created after the passage of the act, the judgment in Stanley v. Jeffries is affirmed."

In Stanley v. Great Falls, supra, the court said: "Herein the Legislature did not attempt to impose a liability upon the people with respect to past transactions, but merely gave them the option to impose such a burden upon themselves if they saw fit, which, in so far as this inhibition of the Constitution is concerned, they may do. In re Pom-

eroy, 51 Mont. 119, 151 P. 333. * * * However, what is the purpose of the act in so far as it deals with special improvement district bonds and warrants issued prior to the date thereof? Such bonds and warrants were, it is true, issued for the purpose of constructing a public work, and consequently issued for a public purpose, but the transaction has been completed and the bonds and warrants accepted in full settlement thereof; they have passed into the hands of individuals or corporations. With respect to these, there is no duty or obligation resting upon the city other than to enforce and obey the provisions of the special improvement district laws; if this is done, and still a loss is suffered by reason of deficiencies in that law, the loss falls upon the holders of the bonds and warrants, and not upon the city." From this case it appears that there is no obligation resting upon the city other than to enforce the provisions of the special improvement district laws. The court held in Gagnon v. Butte, 75 Mont. 279, 243 P. 1085, 1088, 51 A. L. R. 966: " 'There is no liability in the city to the contractor other than to make and collect the assessment and pay it over, unless the city fails in some duty it owes to the contractor connected with the levy and collection of the assessment. Upon the receipt of the assessment the city becomes liable to the contractor as for money received to his use.' 2 Dillon on Municipal Corporations (5th Ed.) § 827. * * * Primarily, the city of Butte incurred no personal liability to the contractor who did the work. It was merely constituted an instrumentality of the law in initiating and carrying out the improvements and in collecting the money due upon assessments made by it against the property benefited in order to pay the obligations incurred in execution of the work. * * * The plaintiff was chargeable with knowledge of the nature and terms of the city's obligation with respect to the bonds, and to now permit him to hold the general taxpayers responsible because of the neglect of duty on the part of the city treasurer would be manifestly unjust." And much to the same effect will be found the principles laid down in the following cases: Moore v. City of Nampa, 18 F.(2d) 860, 861 (C. C. A. 9); New First National Bank v. City of Weiser, 30 Idaho, 15, 166 P. 213; Capital Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A. L. R. 1264; Town of Windfall City v. First National Bank, 172 Ind. 679, 87 N. E. 984, 89 N. E. 311; Castle v. City of Louisa, 187 Ky. 397, 219 S. W. 439; Morrison v. Morey, 146 Mo. 543, 48 S. W. 629.

The case of Hitchcock v. Galveston, 96 U. S. 341, 348, 24 L. Ed. 659, fairly illustrates the line of argument of plaintiff in its effort to shift the indebtedness of a special improvement district to the taxpayers of the city. In the main the law presented by plaintiff could be accepted if the facts here were substantially identical with the facts cited in those cases. In the first place, the town of Ryegate did not enter into a contract to pay this debt. The town officers had no right to bind the town in this instance by any act or failure to act on their part. All the town agreed to do was to deliver the bonds and agree to make the necessary assessments against the property, and the contractor accepted the bonds in full payment. Nowhere has the court been able to find authority for holding that the debt of a special improvement district is an obligation of the city or town; seemingly under Montana statutes and decisions there can be found no authority for doing so. Under the contract in the Hitchcock Case the city was primarily liable for the cost of the improvement; "the resort to the lot-owners is to be after the work has been done, after the expense has been incurred, and it is to be for reimbursement to the city."

That the special improvement district in Ryegate "for practical purposes included the town" was a general statement made by counsel for plaintiff in their brief. According to the stipulated facts herein, the improvement district embraced within its boundaries thirty business houses, several public buildings, and sixty-one residences, and thirty-five residences, four warehouses, and a substation of the Montana Power Company in the town but outside of the improvement district. Of that number, not within the district, thirteen residences and two warehouses receive no benefit from the improvement district except fire protection, and twenty-two residences and two warehouses "cannot use the water system and improvements or equipment for fire protection, or for any other purposes as the same is now installed." It appears that the persons owning property within the district were the ones chiefly benefited by the water system, and that perhaps the claim here made should have been advanced in the suits brought in the state court to enjoin the town and its officers from levying the special improvement assessments, wherein the Lumbermen's Trust Company was represented by its counsel. From the evidence there were many taxpayers outside of the district who were not benefited by the water system and who

were given no opportunity to be heard on the question of creating the indebtedness.

The agreed facts show that plaintiff purchased these bonds from the Security Bridge Company "with the knowledge that they were special improvement district bonds and with full knowledge of the laws of Montana governing the issuance of such bonds, the power of the defendant with reference thereto and the methods provided and authorized for the payment thereof."

Whatever the decision here, loss is bound to be sustained, if for the plaintiff, many taxpayers who derive no benefit from the waterworks system and others who never had a chance to object; if for the defendant, the bondholders lose. It was held by the Supreme Court of Washington in German-American Savings Bank v. Spokane, 17 Wash. 315, 49 P. 542, 549, 550, 38 L. R. A. 259, that: "After all that can be said and done, however, as a matter of right and law, where one of two parties must suffer, the loss should fall upon the one who has had the best opportunity to protect himself, and is the most at fault. * ⁚ ⁚ While, perhaps, such general taxpayer might have compelled the city officers to act after the work was done, and the danger of loss to him imminent, the contractor or warrant holder had this same right, and the courts have all the time been open to him. By force of the contract, such officers should be held to be more directly his agents or representatives than the agents of the general taxpayers for the purposes of the assessment, if they were such taxpayers' agents at all in the premises. By the contract, the contractor has, in effect, adopted the machinery provided for raising his money through the acts of such officers."

■ It is, of course, manifest that the town had exceeded its constitutional limit of indebtedness, but I cannot agree with counsel that under the circumstances here there would be a general liability on the part of the town, and that the calling of an election to authorize additional indebtedness should be treated as a mere formality, and that the failure to call it would amount to no more than an irregularity. On the contrary, there was no power at all on the part of the town to incur such excessive indebtedness without the previous authorization of the qualified voters.

After consideration of both sides of the issues, the court feels obliged to hold that the town of Ryegate did not become indebted to plaintiff on account of the special improvement district bonds delivered to it. In accordance with these views, judgment will be entered for the defendant, with costs. Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 621; Stanley v. Jeffries (Stanley v. City of Great Falls), 86 Mont. 114, 284 P. 134, 70 A. L. R. 166; City of Litchfield v. Ballou, 114 U. S. 190, 5 S. Ct. 820, 29 L. Ed. 132; City of Santa Cruz v. Wykes, 202 F. 357, 361 (C. C. A. 9); Deer Creek Highway District v. Doumecq Highway District, 37 Idaho, 601, 218 P. 371; Mittry v. Bonneville County, 38 Idaho, 306, 222 P. 292; Eaton v. Shiawassee County (C. C. A.) 218 F. 588; Atkinson v. City of Great Falls, 16 Mont. 372, 40 P. 877; 44 C. J. 1131; sections 5278, 5280, 5039 (subdivision 64), 5227, 5229, 5230, and 5279 of the Revised Codes of Mont. (1921); 44 C. J. 1194; State ex rel. City of Great Falls v. Jeffries, 83 Mont. 111, 270 P. 638.

### Order.

On application of plaintiff it is ordered that the decision heretofore rendered in the above-entitled cause may stand as the findings of fact and conclusions of law required under Equity Rule 70½, to avoid any question that may arise as to whether said cause is an action at law or a suit in equity, and accordingly such decision is hereby amended to conform to said rule.