Gunter, J.
This action by appellant upon obligations of appellee town, tried to the court, resulted in findings for appellees and a judgment in their behalf for costs. *366 To review the judgment is this appeal. The facts are: April, 1897, the hoard of trustees of appellee town was authorized by a vote of its qualified electors to construct a system of water works, and to issue therefor bonds for $30,000.00. September, 1897, a contract was made between the town and one Cotton, for the construction, of the works for $21,500.00, payable in the town’s negotiable interest-bearing'bonds.
Pursuant to the power given by taxpayers, and to carry out the contract with Cotton, October, 1897, an ordinance was passed by the board of trustees of appellee town authorizing the issuance of $25,000.00 in bonds in denominations of $1,000.00 each, payable at the option of the town in ten years and absolutely in fifteen years. These bonds were issued and placed in escrow to be delivered to Cotton or his assignees as the work progressed. The original contract was so amended in December, 1897, by certain changes in the specifications thereof, as to give Cotton, or his assignees, the entire bond issue of $25,000.00. In the same month the contract was assigned by Cotton to one Mitchell. Some time in the latter part of January, 1898, the water works were begun. Two strikes occurred among the laborers thereon, one the latter part of January, and the other the earlier part of February. The laborers at the first strike demanded an increase in their pay of five cents per hour, and at the second strike a further increase of five cents per hour. The water works committee, to which was delegated the matter by the board of trustees, agreed with Mitchell, in order to have the works go on, to issue to him the obligations of the town at a discount of about 41 cents, sufficient to cover this alleged increase in the cost of his labor. March 5, by resolution, obligations were ordered issued, to cover this agreement, to the amount of $5,976.50. The resolution thus passed prescribed the *367 form of these obligations, such, form being the following, to wit:
“No. 1. $100.00.
Gillett, Colorado, March 7th, 1898.
. For Value Received, the Town of Gillett, El Paso Oo'nnty, Colorado, hereby acknowledges itself indebted and promises to pay to W. H. Mitchell or bearer, one hundred dollars, lawful money of the United States of America, with interest thereon at the office of the Town Treasurer of said town in said Town of Gillett, from and out of the moneys now, or which may hereafter come into the “General Water Supply Fund,” created by ordinance, and the Town Treasurer of said town is hereby authorized, directed and required, to fully pay, satisfy and discharge this obligation, for principal and interest from the moneys of said fund in the Town Treasury in the order of its registration at the office of said Town Treasurer, for payment, and after the same has been duly called by the Treasurer for payment, interest shall cease to accrue thereon, as provided by law. This obligation is made and incurred solely on account of the construction, by said town, of a suitable system for supplying said town with water, under and in full compliance, and in strict conformity with the Constitution and laws of the State of Colorado, in such cases made and provided. And it is hereby certified and recited, that the debt of this obligation does not exceed the limitations prescribed by the Constitution or laws of the State of Colorado.
By order of said Town of Gillett and the Board of Trustees of said Town.
The Town of Gillett,
By Edwin N. Hawkins,
Attest: Mayor.
• Geo. A. Killam, ■
(Seal.) Town Clerk and Recorder.”
*368 Obligations in this form were on March 7 issued and delivered to Mitchell. They were upon the same date presented to the treasurer of the town who made the following endorsement thereon:
“No funds. This obligation bears interest at the rate of 8% per annum from this date until paid, according to law.
Fred B. Owen, Town Treasurer of the Town of Gillett.”
March 21, in consideration of certain further changes in the specifications of the contract for the construction of water works, the board, by resolution, authorized the issuance of obligations in the sum of $8,500.00. These were issued at a discount of about 40 cents, and in the same form as the obligations of March 7. They were issued March 21, delivered to Mitchell, and on that date presented by him to the town treasurer, who made the same endorsement thereon as on the issue of March 7. There has been at no time any moneys in the “Town Water Supply Fund. ” No payments have been made upon the principal or interest of any one of the obligations in suit, and a few days before the bringing of this action the board of trustees of appellee town passed a resolution declaring them void and announcing a determination not to pay them.
The present action, instituted December, 1899, was upon fifty of these obligations, 27 thereof being of the issue of March 7, and 23 thereof of the issue of March 21. The answer was a denial, want of consideration for the obligations, and fraud in their issuance.
The issues thus presented were found by the trial court for appellees, and judgment entered for them for costs.
It is here urged in support of the judgment below that the obligations are void, because: (1) The *369 board of trustees had no authority to issue such obligations of indebtedness. (2) They were issued at a discount. (3) They were issued without consideration. (4) There was fraud in their issuance.
The first objection is decisive. Appellee town is a municipal corporation under the laws of this state.
“A municipal corporation can exercise only such powers as are granted to it by its charter or by the general law of the' state, either in express words or by necessary or reasonable implication, or such as are incidental to the powers expressly granted, or such as are essential to the objects and purposes of the corporation. ” — The City of Durango v. Reinsberg, 16 Colo. 327, 330; Phillips v. City of Denver, 19 Colo. 179, 182.
“The rule is general, and applies to the corporate authorities of all municipal bodies, that, where the mode in which their power on any given subject can be exercised is prescribed by the charter, the mode must be followed.” — Weaver v. Canon Sewer Co., 18 Colo. App. 242; Keese v. City of Denver, 10 Colo. 112; Zottman v. City and County of San Francisco, 20 Cal. 96 (81 Am. Dec. 96).
“Where the statute has prescribed how the municipality may act, it has no power to act in any other or different manner.” — Weaver v. Canon Sewer Co., supra.
‘ ‘ The mode in such a case constitutes the measure of power.” — Keese v. City of Denver, supra.
In the act concerning towns and cities the powers of municipal corporations are enumerated and defined. — 2 Mills’ Ann. Stats., sec. 4403; 3 Mills’ Ann. Stats. (Supplement), sec. 4403; 3 Mills’ Ann. Stats. (Revised Supplement), sec. 4403.
The only power conferred upon towns and cities to incur an indebtedness for the construction of water works is by subdivision 6 of section 4403, supra. *370 This subdivision requires that the indebtedness-must be authorized by ordinance, that such ordinance must be irrepealable until the indebtedness therein provided for shall be paid, that such ordinance shall,' inter alia-, provide for the levy of a tax sufficient to pay'-the annual interest and extinguish the principal of the debt within the time limited for the debt to run, and that the debt thus authorized shall mature in not less than ten years nor more than fifteen years.
The obligations in suit were issued pursuant to an ordinance passed February 19,1898, and two resolutions of the board of trustees, one of March 5, the other of March 21, but the ordinance failed to comply with the statute in that it made no provision for the levying of the tax with which to redeem the obligations, and did not provide that they should mature not earlier than ten years, nor later than fifteen years. It provided that the obligation should be in such form as the board of trustees should determine. The two resolutions provided for the issuance of the obligations in the form hereinbefore set forth. From an inspection of this form it is seen that the obligations matured on demand. It thus appears that the ordinance did not comply with the law in that it failed to provide for the levy required, and did not provide for the obligations to run for the time required by statute. The recital in these obligations, or “bonds” as appellant insists they are, that they were issued in compliance with the law, constitutional and statutory, of this state does not cure the violation of the law in their issuance even in the hands of an innocent purchaser for value, which appellant says that he is.
Every one is bound to take notice of the law.
“ The recitals in bonds are binding only as to matters of fact and not as to matter of law, of which latter every person is bound to take notice and is con *371 clusively presumed to have done so.” — Simonton on Municipal Bonds, § 193.
“The holder of bonds must, at his peril, take notice of the existence and term of the law by which it is claimed the power to issue such bonds is con - ferred, and he is chargeable with notice of the statutory provisions under which they were issued.”— Simonton on Municipal Bonds, § 150; Bank v. City of St. Joseph, 31 Fed. 216; Anthony v. Jasper Co., 101 U. S. 693; Frances v. Howard Company, 54 Fed. 487.
“Not only courts but individuals are bound to know the law and cannot be received to plead ignorance of it. The holder of the bonds in question can claim no indulgence on that score and can take no advantage from the allegation that he is a bona fide purchaser without notice.” — Town of S. Ottawa v. Perkins, 94 U. S. 260.
Appellant, therefore, knew that the board of trustees of appellee town had no power to create an indebtedness or issue obligations for the construction of a system of water works except by an ordinance in compliance with sec. 4403, supra.
“All ordinances shall, as soon as may be after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council or board of trustees and the clerk.” — 2 Mills’ Ann. Stats., sec. 4443.
“The authority of a municipal corporation to issue bonds is derived from public laws, and the avenues to information in regard to the law and ordinances of such corporations being open to public inspection, the holder of such securities will be presumed to have examined them and to have known whether the corporation had the requisite power to issue the bonds.” — Bissel v. City of Kankakee, 64 Ill. 249.
*372 See also: Dickson v. Field, 111 U. S. 83, 93.
Appellant was therefore charged with notice of the terms of the ordinance providing for the issuance of the obligations in suit. He consequently knew that the ordinance did not comply with the law.
“The bona fide holder of a municipal bond is chargeable with whatever defects appear upon- the bond, and with such notice of failure to perform the prior condition which the recitals in the bond disclose.” — Simonton on Municipal Bonds, § 153.
It was apparent from an inspection of any one of these obligations that they were issued in violation of the law, in that they did not mature as was provided by the law authorizing their issuance. We conclude that the board of trustees had no authority to issue the obligations involved, that appellant was charged with notice of such lack of power, the obligations, therefore, are void in his hands, and the judgment of the lower court denying him relief upon them was right. Its judgment is affirmed.

Affirmed.