## No. 13,647.

CITY OF AURORA *v.* KRAUSS.
(59 P. [2d] 79)

Decided June 15, 1936.

Messrs. HARRISON & HARRISON, Messrs. ALTER & UPTON, for plaintiff in error.

Messrs. VAN CISE & ROBINSON, Mr. J. E. ROBINSON, for defendant in error.

Mr. ADDISON M. GOODING, Mr. FRED A. VIDEON, Mr. WILLARD J. ALLEN, Messrs. GRANT, ELLIS, SHAFROTH & TOLL, Mr. MYLES P. TALLMADGE, Mr. CHARLES W. SHELDON, Jr., Mr. WILLIAM E. HUTTON, amici curiae.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

14

KRAUSS sued the city (formerly town) of Aurora to recover judgment on thirteen one thousand dollar bonds owned by him, payment of which was in default. For a first cause of action he alleged the bonds to be general obligations of the city. In a second cause of action, plaintiff alleged the liability of the city for payment of the bonds by reason of "guaranty certificates" endorsed thereon. The city denied the allegations, setting up numerous defenses in its answer. Plaintiff recovered judgment for the face of the bonds and interest. The city assigns error.

December 7, 1925, the town board of trustees adopted and approved an ordinance by virtue of chapter 180, Session Laws of 1923, "An Act Relating to Local Improvements in Cities and Towns." This ordinance created an improvement district in the town of Aurora, known as Water District No. 3, ordered the construction therein of water extension mains, and provided for the issuance of *bonds of the district*, in payment for said improvements; also provided for *guaranteeing payment* of the bonds by the town. Acting under the above statute, the board previously had found and declared that there existed a necessity for the creation of Water District No. 3, "and the construction therein of certain water extension main improvements." The district having been created, opportunity was regularly afforded owners of real estate therein liable to assessment, to make objections if they so desired. It is admitted that the district comprises less than one-fourth of the city territory. The proposed improvements consisted of water extension mains, fire hydrants and incidentals, and the ordinance provided that pursuant to the provisions of the mentioned statute, local improvement bonds of the town be issued for the purpose of paying for the district improvements. The bonds, as further provided, were payable six years after date, "out of the moneys collected on account of the assessments made for said improvements." The ordinance set out the

form of the bond, which is usual for local improvement bonds, the pertinent parts of which are:

"Town of Aurora. Aurora Water District Number Three.

"The town of Aurora * * *, for value received, acknowledges itself indebted and hereby promises to pay to the bearer hereof the sum of one thousand dollars * * * this bond is issued for the purpose of paying the cost of water main extension improvements in Aurora Water District No. 3 * * *. This bond is payable out of the proceeds of a special assessment to be levied upon real estate, *situate* in the town of Aurora, Colorado, in *said Water District No. 3, specially benefited by said improvements,* and the amount of the assessments * * * is * * * made a lien upon *said real estate* * * *." Attached to each bond were interest coupons and the "Guaranty Certificate," provisions of the latter here pertinent being as follows: "Payment of the within bond is guaranteed by the town of Aurora * * * by ordinance * * * adopted, duly approved and made a law of said town * * * by a two-thirds vote of all the members of the board of trustees * * *." This "guaranty certificate" was signed by the mayor and attested by the town clerk.

July 6, 1926, the board adopted an ordinance approving the whole cost of the improvements for the district, approving the apportionment of said cost to *each lot or tract of land* in the *district* and prescribing the method for collecting and payment of said assessments. This ordinance recites that the whole cost, including inspection, collection, incidentals and interest, is the sum of $19,180 and that of this sum the *Town of Aurora* is to pay the cost of street intersections and fire hydrants amounting to $1,944.59.

The city alleged as additional defenses that the purchase and erection of water works was not authorized by the majority of taxpaying electors at an election, and therefore, the bonds are void because of failure to comply with subparagraph sixty-seven, section 8987, Compiled

Laws of 1921; that the bonds are void because issued in violation of the express provisions of sections 1 and 2, article XI of the state Constitution in that they constitute a lending of the credit of the municipality securing payment of obligations of a local improvement district; that the bonds were issued contrary to section 8, article XI of the state Constitution and subparagraphs six and sixty-seven of section 8987, Compiled Laws of 1921; that the bonds, upon their face, disclose that the city was acting as agent for the special improvement district created within its limits and that the bonds were to be paid from the collection of special assessment taxes upon real estate within the improvement district specially benefited; that the act relating to improvements, known as chapter 180, Session Laws of 1923, is unconstitutional because in violation of the provisions of section 21, article V of the state Constitution. For a first answer and defense to the second cause of action, based upon the guaranty of the city, it is contended that the guaranty is without consideration and not a binding obligation of the city.

Defendant offered to prove the total assessed valuation of all property in the city for the year 1925, for the purpose of presenting the fact that an excessive debt was created contrary to section 8, article XI of the Constitution; that there was no general or special election held at which the question of the issuance of these bonds was submitted to the electors for approval; that the general property owners were given no notice of, and afforded no opportunity to object to, the creation of improvement districts or assessments to be levied; that the created district did not include the entire city, but embraced less than one-fourth of the territory within the limits thereof; that the question of purchasing or erecting the water works, if the improvements herein involved should be held to be such, was never submitted to the taxpaying electors at a general or special election; that while some of the special assessments here involved are delinquent, the total special assessments are sufficient in amount, if

paid, to discharge and fully pay this indebtedness; that the laying of the mains throughout said district was to supply the inhabitants of the district with water purchased direct from the City and County of Denver by the consumers in said district and so much thereof as is used by the city is paid for by the city; that none of such consumers purchase water from the city and that the city receives no revenue therefrom. There was a further offer to prove that the total outstanding unpaid indebtedness of the city of Aurora at the time of the issuance of these bonds was $48,649.94.

Plaintiff objected to these offers of proof, and they were rejected upon the theory, as stated by the court: "That these bonds come under the authority given the cities to provide water for its inhabitants," and therefore comes within the exception contained in section 8, article XI of the state Constitution. This provision is as follows: "Debts contracted for supplying water to such city or town are excepted from the operation of this section." In other words, the court held that the city, in this instance, was not required to observe the general provisions of the Constitution therein contained relating to the contracting of a debt by the city.

██ The trial court undoubtedly misapprehended the limitations otherwise surrounding the issuance of bonds by a municipality, even though they be issued to pay a debt incurred for supplying water to its inhabitants. While we think otherwise, even if it be conceded that the bonds in question were general obligations for "supplying water," and specifically exempt by section 8, article XI, from the operation of the Constitution as applied to the "contracting of a debt by loan in any form," still they must be issued according to statutory prescription. The exemption prescribed in this section of the Constitution does not mean that there are no limitations whatever upon an indebtedness which may be incurred even for water supply, and that such an unlimited debt would be a general obligation of the city. If this were so, then

debts to be paid from general taxation could be created in such amounts and payable in such short limits of time as to be confiscatory of property. While this section of the Constitution exempts debts incurred for supplying water to the city from the special limitations therein, it does not prevent the legislature from otherwise prescribing conditions. This was done, as is made evident by the provisions of subparagraph sixth, and subparagraph sixty-seventh, section 8987, Compiled Laws 1921, which confers the only power given to towns and cities to incur indebtedness in such cases. This incurrence must be by ordinance, irrepealable until the debt is paid, there being a provision for levying of a tax sufficient to extinguish the debt within the limits of its maturity, which must be not less than ten nor more than fifteen years. It was so said in the case of *Sauer v. Town of Gillett,* 20 Colo. App. 365, 78 Pac. 1068. The bonds in question in the case now before us matured in six years, and therefore are void upon their face as general obligations, because not in compliance with the law controlling the issuance thereof.

The bonds are no more than their face wording tell us they are, that is, ''For the purpose of paying the cost of water main extension improvements in Aurora Water District No. 3.'' They were issued under authority of chapter 180, S. L. 1923, which includes, ''water mains'' as a local improvement. Nowhere does this act, which relates solely to local improvements, say anything about ''supplying water.'' It may be said that the improvements here made benefited the entire municipality and were such as could have been made at the expense of all the owners of property in the municipality. To be such, it must be so declared. Such a declaration rested in the discretion of the town board, and if it declared otherwise, that is, that the improvements were a local necessity specially benefiting certain property to be assessed, then the exercise of that discretion is binding on the court to the end that we should not say to the contrary. Not being general obligation bonds as we now have determined, still

they are valid local improvement bonds, if there has been a compliance with all requirements of law relating to the issuance of such bonds. It is not contended that there has been a noncompliance in this respect, and there can be no such tenable contention in view of the following recitals contained in the bonds:

"This bond is issued for the purpose of paying the cost of water main extension improvements in Aurora Water District No. 3, in the Town of Aurora, by virtue of and in full conformity with an Act of the General Assembly of the State of Colorado, entitled, 'An Act relating to local improvements in cities and towns,' approved April 9, 1923 * * *.

"This bond is payable out of the proceeds of a special assessment to be levied upon real estate situate in the Town of Aurora, Colorado, in said Water District No. 3, specially benefited by said improvements, and the amount of the assessments to be made upon the real estate in said district for the payment thereof, with accrued interest, is by the aforesaid act, made a lien upon said real estate in the respective amounts to be apportioned to said real estate and assessed by an ordinance of said town, and it is hereby certified and recited * * * that every requirement of law relating to the creation of said water District No. 3, the making of said local improvements, and the issue of this bond, has been fully complied with * * *."

 The judgment against the city for general liability, if it is upon the first cause of action, cannot stand unless it is determined that the guaranty of the city, herein set out, created a present general liability in all events.

These bonds are debts, by limited contract classified by district, of the specially benefited property owner, in the making of which he had a voice, if only by minority protest. It was the guaranty of his debt that was desirable to the bondholder. The fact that it was considered necessary and permissible to add a guaranty by the town officials, is an acknowledgment that another or a principal,

first owed the debt. If the guaranty is to be considered as transforming the bond from a limited contract or local improvement bond into a general obligation of the city, and enforceable as such, then the constitutional and statutory protection is withdrawn from the external taxpayer who is not within the limits of the improvement district, without due process, in fact without process at all; and the internal taxpayer who has paid his special taxes according to the contract is likewise subjected upon a limited process. It may be considered as conceded that no notice was given, or to be given, to a general taxpayer who thus became ultimately affected. The moral, legal and constitutional obligation resting upon the city to respect the rights of such taxpayers has been disregarded and the power—regardless of Constitution or statute— to burden the taxpayers with debt, is left solely with the governing town authorities. The guaranty here in question, if given force and effect, compels the taxpayer to assume payment of an obligation which is in default through no deficiency of his. Fundamentally, all rights in this controversy are entirely on the side of the taxpayer not in default and yet to be heard. It is inescapable that the bondholder has no greater rights, and in fact no right, other than that given him as appears on the face of the contract. Knowledge of this right was accessible to him from the face of the bond and the law therein cited as authority for its issuance. The bond is a primary obligation between the specially benefited taxpayer and the holder thereof, and the guaranty here attempted to be made could in no wise make it even a secondary general obligation of the municipality. So far as the Constitution is concerned there is no distinction between primary and secondary obligations. If an amortization period of payment of not less than ten nor more than fifteen years was necessary in the issuance of a primary general obligation bond, then it is always necessary before the obligation could have that effect, and this would be true even if the guaranty gives the bond the effect of a contingent lia-

bility, as such was declared to be the effect of a guaranty in the case of *Deter v. Delta,* 73 Colo. 589, 217 Pac. 67.

Section 1, article XI of the Constitution of the state of Colorado, is as follows:

"Neither the state, nor any county, *city,* town, township or school district *shall* lend or *pledge the credit* or faith thereof, directly or indirectly, *in any manner to,* or *in aid of,* any person, company or corporation, public or private, for any amount, or for any purpose whatever; or become responsible for any debt, contract or liability of any person, company or corporation, public or private, in or out of the state."

The guaranty provided by chapter 181, S. L. 1923, if followed through to its mandatory provision requiring that "such city or town shall cause taxes to be levied upon all the taxable property of the city or town, sufficient to pay said warrants," is clearly in effect the lending of the credit of the city *in aid of* persons who are defaulting taxpayers and renders the city responsible for their debt, in plain violation of the above constitutional provision. "This section [§1, Art. 11, Colo. Const.] is to be construed as prohibiting a town or city by its own voluntary corporate act from pledging its credit to, or becoming responsible for, any debt, contract or liability in aid of a third party." *Mayor v. Shattuck,* 19 Colo. 104, 34 Pac. 947. There has been much discussion concerning the character of the water district here involved, as to whether or not it is an entity separate and apart from the city. A determination of this question is unnecessary in this case. The district, as such, whatever its character, is not in default and is not being aided; it is the defaulting taxpayer in the district, and since the Constitution prohibits the city from in any way becoming responsible for his debts, it follows that the legislature cannot by statute make it so liable.

██ Considering that the taxpayer may ultimately appeal to the court as the guardian of his constitutional and statutory rights, we think and so hold, that the pe-

cuniary interest of the bondholder as disclosed by this unconstitutional guaranty, is subversive of the constitutional rights of the unbenefited general taxpayer, and the specially benefited taxpayer within the district who has paid his obligation. Such taxpayers would, by the guaranty, be subjected to double taxation, and it necessarily follows that section 33, chapter 180, S. L. 1923, is unconstitutional, as in violation of the prohibition against lending or pledging the credit or faith of a municipality in aid of third persons. In ultimate effect, the guaranty is meaningless because nothing is added to the bond thereby, beyond the statutory duty imposed upon the town officials to use the means provided for collection of the taxes specially levied, and the enforcement of the lien in favor of the bondholder upon the property specially benefited. The judgment herein entered against the city, based upon a misconception of the bonds as general obligations, must be and is reversed, and the bondholder left to such remedy as the law provides.

Judgment reversed.

MR. JUSTICE BUTLER and MR. JUSTICE BOUCK concur in part and dissent in part.

MR. JUSTICE BUTLER, concurring in part and dissenting in part.

I concur in the reversal of the judgment. I concur also in that part of the majority opinion holding that the bonds are not general obligations of the municipality, but dissent from the rest of the opinion.

Arthur W. Krauss, plaintiff below, obtained judgment against the city (formerly town) of Aurora, a municipal corporation. The city seeks a reversal of the judgment.

In December, 1925, the town of Aurora, acting under chapter 180, Session Laws of 1923, entitled "An act relating to local improvements in cities and towns," ordered the construction of water extension mains, fire hydrants and incidentals, and designated the part of the

town in which such local improvements were to be made as "Aurora Water District No. 3." The total cost was $19,180. The town was to pay $1,944.59, and the rest was apportioned among several lots, each lot being assessed to the extent that it was found to be specially benefited by the improvement. To pay the part of the cost assessed against the property specially benefited by the improvement, special assessment bonds of the town were issued. They were subscribed by the mayor and countersigned by the town treasurer, with the corporate seal affixed, attested by the town clerk. The bonds were issued in full compliance with the requirements of the law and are admitted by all concerned to be valid special assessment bonds, payable out of the moneys collected on account of the special assessment. Acting under section 33 of chapter 180, supra, the board of trustees of the town, by ordinance adopted by a two-thirds vote, guaranteed, on behalf of the town, the payment of said special assessment bonds.

The complaint pleaded two causes of action. In the first, the plaintiff sought to recover a money judgment on the bonds as original obligations of the town; in the second, he sought to recover a money judgment on the guaranty. Judgment was rendered for Krauss for the face value of the bonds held by him, plus interest.

It seems clear that the bonds are not general obligations of the municipality.

The Local Improvement Act of 1923 (S. L. '23, c. 180) provides (section 30) that the special assessment bonds issued thereunder "shall be payable out of the moneys collected on account of the assessments made for said improvements."

Each of the bonds in question contains the following recitals:

"This bond is issued for the purpose of paying the cost of water main extension improvements in Aurora Water District No. 3, in the Town of Aurora, by virtue of and in full conformity with an Act of the General Assembly of

the State of Colorado, entitled, 'An Act relating to local improvements in cities and towns,' approved April 9, 1923 * * *.

"This bond is payable out of the proceeds of a special assessment to be levied upon real estate situate in the Town of Aurora, Colorado, in said Water District No. 3, specially benefited by said improvements, and the amount of the assessments to be made upon the real estate in said district for the payment thereof, with accrued interest, is by the aforesaid act, made a lien upon said real estate in the respective amounts to be apportioned to said real estate and assessed by an ordinance of said town, and it is hereby certified and recited * * * that every requirement of law relating to the creation of said Water District No. 3, the making of said local improvements, and the issue of this bond, has been fully complied with * * *."

There is nothing in the point made by counsel for Krauss that because the bonds do not provide that they are payable *only* out of the proceeds of a special assessment to be levied upon real estate in the water district, they are general obligations of the municipality. As we said in *Sanborn v. Boulder,* 74 Colo. 358, 361, 221 Pac. 1077, the effect of inserting the word "only" would be "merely to make more emphatic" the provision that already is clear. The bonds are local improvement bonds, and such bonds are not general obligations of the municipality.

Krauss was not entitled to recover on his first cause of action, and the trial court erred in rendering judgment thereon in his favor.

II. A more serious question is presented by the second cause of action, in which a recovery is sought on the guaranty. The friends of the court confine their discussion to this branch of the case. The matter is not free from difficulty.

Section 33, chapter 180, Session Laws of 1923, is as follows: "The city council or board of trustees may, by ordinance, adopted by two-thirds vote, guarantee on be-

half of the city or town, the payment of all or any special assessment bonds issued in pursuance of this act.''

1. It is contended that the guaranty violates sections 1 and 2 of article XI of the state Constitution, which provide, respectively, that no city or town ''shall lend or pledge the credit or faith thereof, directly or indirectly, in any manner to, or in aid of, any person, company or corporation, public or private, for any amount, or for any purpose whatever; or become responsible for any debt, contract or liability of any person, company or corporation, public or private, in or out of the state''; and that no city or town ''shall make any donation or grant to, or in aid of * * * any person, company or corporation, public or private * * *.''

In effect, the argument is this: The bonds are not bonds of the municipality but of the improvement district. The improvement district is a public corporation distinct from the municipality. If it is not that, it is at least a person or an aggregation of persons. In guaranteeing the payment of the bonds, the municipality lent or pledged its credit in aid of that public corporation, person or aggregation of persons, and became responsible for the contract or liability thereof in violation of the constitutional provision just quoted. The argument is unsound. An improvement district is thus defined in section 5, chapter 180, Session Laws of 1923: ''The term 'district' when used in this act, means the geographical division or divisions of the municipality within which any local improvement may be made, or when so declared by the council or trustees, may include the entire municipal area.'' Such district has no governing body, no officers, no power to make contracts or to levy taxes; it collects no money and disburses none; it cannot sue or be sued—in short, it has no power, governmental or otherwise.

Counsel quote and have been misled by the following language in the opinion of *Sanborn v. Boulder, supra.* These constitutional provisions relate to obligations of the city and not to obligations of a local improvement

district. These bonds, as we have held, are, and on their face they purport to be, bonds of the local improvement district, and not bonds of the city, and are made payable only out of assessments for the improvements and levied upon the frontage. They are obligations, therefore, not of the city, but of an improvement district and are not within such inhibitions of the state Constitution * * *." We there had before us the question whether the provisions of section 8 of article XI of the state Constitution relating to the contracting of debts by loan, applied to local improvement bonds, payable out of special assessments. We held that they did not. We did not use the quoted words in the sense in which counsel in the case at bar used them in argument. We called the bonds those of the local improvement district to distinguish them from general obligation bonds of the city. The words were used rather loosely. The local improvement act of 1923, cited above, puts the matter beyond question. Section 30 provides for the issuance of "special assessment bonds of the city or town," payable out of moneys collected on account of assessments for local improvements. The bonds in question purport to be bonds of the town of Aurora, and such in law and in fact they are.

Strictly speaking, the so-called guaranty is not a guaranty at all; it is a misnomer to call it such. To constitute a guaranty, there must be a principal debtor or obligor. A guaranty is "a promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable or expected to become liable therefor in the first instance." 12 R. C. L., p. 1053, §1. The majority take the position that the bonds are debts of the specially benefited property owners. I challenge the correctness of that position. The bonds are not the bonds of the property owners. The property owners are not obligors thereon, and the bondholders cannot sue them thereon any more than they can sue the district.

What, then, is the situation? The town undertook a

public improvement of benefit to the entire community, though certain property is specially benefited. Work that benefits only private property owners cannot be done by a municipality. When completed, the water mains belong, not to the property owners, but to the municipality, which must maintain them out of the proceeds of general taxes. The work could have been done at the expense of all the owners of property in the municipality, and the fact that a special benefit would accrue to abutting property would not exempt owners of property in a distant part of the municipality from the obligation to pay their share of the general taxes the proceeds of which would be used to pay for the improvements; and in such case the burden resulting from the delinquency of some taxpayers would be borne, at least temporarily, by the other taxpayers, for they would have to pay increased taxes until by redemption of property from tax sales, and by the sale of tax certificates acquired by the municipality, the loss would be made up. However, instead of doing the work at the general expense, certain property was assessed to the extent that it was specially benefited by the improvement, and in order to raise funds to do the work the town issued its bonds payable out of the proceeds of the special assessments.

By the so-called guaranty, the town assumed an obligation additional to the obligation it already was under. What is that additional obligation? It is contended by some of the friends of the court that the obligation is merely to levy the special assessments and collect the money and apply it to the payment of the bonds; but that cannot be, for that is a statutory duty already resting upon the municipality, and the guaranty, so construed, would add nothing to it. The obligation is, not to pay in any event, but only upon a contingency that may or may never arise; and the way in which the obligation may be enforced is provided in chapter 181, Session Laws of 1923. Section 1 provides that a city or town that has guaranteed the payment of any local improvement bond

"may provide for payment under such guarantee, as specified herein, and such guarantee shall not be construed as a debt of such city or town." Section 2 provides that in case there is not sufficient money in the local improvement fund to pay the bond or interest coupon, the bond or coupon may be paid by an interest-bearing warrant drawn on the improvement district fund, and that the city or town shall cause taxes to be levied upon all the taxable property of the city or town sufficient to pay the warrants, "provided that the owner of any warrant remaining unpaid shall be entitled to all the rights which he would have as the owner of the bond or interest coupon which such warrant was issued to pay, and by accepting such warrant, he shall not lose any right or security he had as owner of such bond or interest coupon." Section 3 is as follows: "Any city or town which shall become the owner of any such bond or interest coupon, shall be subrogated to all the rights of any prior owner, and the proper officials of said city or town shall use all lawful means to collect the amount of principal and interest due thereon. If after the payment in full of the principal and interest of all bonds of any improvement district, there shall remain any surplus money in the special fund created therefor, such money shall be placed to the credit of the general fund of the city or town."

There is no merit in the contention that the purchase of bonds by the issuance of warrants, as provided in that statute, is permissive only. In the circumstances, the word "may" should be construed to mean "shall." The procedure provided for in that statute was intended for the protection of the bondholders. The public interests and the rights of bondholders require that the provisions of that statute be regarded as mandatory.

In *Supervisors v. United States*, 4 Wall. 435, 18 L. Ed. 419, the court said:

"The conclusion to be deduced from the authorities is, that where power is given to public officers, in the lan-

guage of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise — the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.

"In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty'."

The Supreme Court of Utah, in *Deseret Savings Bank v. Francis*, 62 Utah 85, 217 Pac. 1114, expresses the rule in these words: "When power is given by statute to public officers, in permissive language, the language used will be regarded as peremptory where the public interest or individual rights require that it should be."

Chapter 181, supra, is somewhat involved. However, it provides clearly that the guaranty shall not be construed as a debt of the municipality. Of course, the payment of special improvement bonds by warrants drawn on the improvement district fund is not open to legal objection, though in itself it adds nothing to the security of the holder of bonds, for the bonds themselves are made payable out of the proceeds of the special assessments.

The only provision that demands attention is the one requiring a levy of taxes upon all taxable property to pay the warrants. It will be noted that the statute requires the municipality to "use all lawful means to collect the amount" of the bonds. Chapter 180, Session Laws of 1923, provides such lawful means. Section 24 provides that failure to pay any installment of the special assessment matures the whole of the unpaid principal. Section 26 requires the sale of the property concerning which there is a default. Section 37 provides that the treasurer of the municipality may purchase the property at such

sale without paying cash therefor; that the certificates of purchase shall be credited at their face value on account of the assessments; and that the certificates may be sold at their face value and the proceeds credited to the fund created by ordinance for the payment of assessments. Section 3, chapter 181, Session Laws of 1923, provides, as we have seen, that any surplus remaining in the special assessment fund after payment of the bonds shall be placed to the credit of the general fund of the municipality. Thus the municipality is adequately protected against loss of money raised by general taxation to pay the warrants. There may not be any default in the payment of special assessments. If any such default should occur, the property may be sold at tax sale for cash, or, if not, the municipality itself may bid in the property and then dispose of the certificate of sale for cash, or the owners may redeem the property from the tax sale. The payment of the warrants, if any are issued, with money raised by general taxation is merely an advancement, the repayment of which is adequately secured. The general tax fund ultimately loses nothing. All the money required to pay the bonds is raised ultimately from the property specially assessed.

If the foregoing views are sound, it would follow that the so-called guaranty does not violate section 1 or section 2 of article XI of the state Constitution.

2. But it is said that chapter 181 of Session Laws of 1923, supra, provides for the levy of general taxes to pay the warrants, and that if the so-called guaranty is to be made good in that way, it would be the creation of a debt; that the debt so created in the present instance, together with other debts then existing, would exceed three per cent of the taxable valuation, and therefore would be in violation of section 8 of article XI of the state Constitution. For the following reasons this contention seems to me to be unsound:

(1) That section of the Constitution excepts from the provisions thereof debts contracted for supplying water

to the city or town, and the water main extensions, though not "water works," properly speaking, are for the purpose of supplying water to the municipality.

(2) There was no showing that the debts would exceed the three per cent constitutional limit. Section 8 of article XI provides: "The valuation in this section mentioned shall be in all cases that of the assessment next preceding the last assessment before the adoption of such ordinance." The ordinance was adopted December 7, 1925; therefore, the assessed valuation for the year 1924 is the valuation that would determine whether or not the debts would exceed the constitutional limit. There was no showing or offer to show the assessed valuation for that year. Proof of the assessed valuation for the year 1925 was not sufficient to raise the constitutional question, and the only offer made was to prove the assessed valuation for 1925.

(3) The so-called guaranty, taken in connection with chapter 181 of Session Laws of 1923, did not create a debt. In *Johnson v. McDonald,* 97 Colo. 324, 336, 49 P. (2d) 1017, we quoted with approval the following language from *Seward v. Bowers,* 37 N. M. 385, 24 P. (2d) 253, which, we said, "clearly defines a debt in the constitutional sense." "The idea of a 'debt' in the constitutional sense is that an obligation has arisen out of contract, express or implied, which entitles the creditor unconditionally to receive from the debtor a sum of money, which the debtor is under a legal, equitable, or moral duty to pay without regard to any future contingency."

The obligation in this case is, not to pay in any event, but only upon a contingency that may or may never arise.

Washington provides for a local improvement guaranty fund raised by general taxation, to be resorted to in case of failure of the local assessments to meet the bonds. In *Comfort v. Tacoma,* 142 Wash. 249, 252 Pac. 929, the important question was whether local improvement bonds became a debt of the city by virtue of the guaranty law, for if so they would increase the city's debt beyond the

one and one-half per cent limit without a vote of the people, and the statute would be unconstitutional. The court held that the bonds did not become a debt of the city, saying, in part:

"To state the matter more simply, the city agrees that if the property holders, whose property has been assessed for the improvement, fail to pay in the regular assessments to cover the bonds when due, then the city will make payment for them to a certain extent by accepting the bonds from the holders and levying a tax for the money to pay the same. This will readily be seen to be only a contingent liability as far as the city is concerned, and in no sense a debt proper.

"If A is indebted to B, and C promises that, if A does not pay B, then he (C) will, no one would contend that C had an outstanding debt. He has but a contingent liability that may or may not ripen into a debt. If A fails to pay, then, in that event, the contingent liability has ripened, and the debt is absolute as to C. But until that time arrives C owes B nothing.

"So in the present case, the city will have nothing to pay if the property-holders meet their obligations and pay their assessments. If they fail to do so, then the city will pay into the fund to the extent outlined in the statute."

3. For the reason that no debt was created or loan made by the so-called guaranty, it seems clear that the provisions of section 8987 of Compiled Laws of 1921, referred to in the majority opinion, has no application to the so-called guaranty.

4. Counsel quote the following from the opinion in *Deter v. Delta,* 73 Colo. 589, 217 Pac. 67 : "* * * the guaranty by the city of payment of these local improvement bonds makes them a contingent liability of the city, and clearly requires the approval of the qualified taxpaying electors of the city before the city can issue them."

The language has no application to this case. The city had enacted an ordinance purporting to create an im-

provement district. Four days later the suit was brought to restrain the enforcement of the ordinance. The case was controlled by a charter provision adopted by the city under authority of the Home Rule Amendment of the Constitution (section 6 of article XX), and the ordinance was adopted before chapter 181, Session Laws of 1923, hereinbefore referred to, was approved; hence the question of the effect of that statute was not before the court.

5. In my opinion, chapters 180 and 181 of Session Laws of 1923, construed together, as they should be, do not offend against the due process clause of either the federal or the state Constitution.

In other states plans have been adopted to supply deficiencies in special improvement funds, so as to meet local improvement bond payments, and they have been upheld as constitutional.

The statutes of some states provide for the creation, by the levy of general municipal taxes, of a special improvement guaranty fund with which to make good any insufficiency in the special assessment fund to pay local improvement bonds; and such statutes have been held not to violate the due process clauses or other provisions of the Constitutions. *Wicks v. Salt Lake City,* 60 Utah 265, 208 Pac. 538; *American Company v. Lakeport,* 220 Cal. 548, 32 P. (2d) 622. And see, *Comfort v. City of Tacoma, supra.*

In the Lakeport case, supra, the court said: ''In other jurisdictions the precise question has been presented, namely, whether a municipality may constitutionally levy a general tax to meet delinquencies in special assessments for local improvements; and it has been uniformly decided in the affirmative * * * It should be noted, also, that the method employed by our statute is in effect an *advancement* of funds, which the city may normally be expected to recover upon resale of the lands secured at the delinquent sales.''

The court held in that case that a mandatory duty

rested upon the respondents to levy and collect a tax to meet the delinquent assessments.

In *Oregon Short Line R. R. Co. v. Berg,* 52 Idaho 499, 16 P. (2d) 373, the guaranty fund statute was passed after the bonds were issued, and it was held, the court dividing four to three, that as applied to such bonds the statute was a denial of due process. In the dissenting opinion it is said: "Every reported case in which similar laws have been attacked has sustained the legislation in its *prospective* operation." (Italics are mine.) In the case at bar chapter 181 of Session Laws of 1923 was enacted before the creation of the special improvement district and the issuance of the bonds.

In *Stanley v. Jeffries,* 86 Mont. 114, 284 Pac. 134, the court said: "When, therefore, the legislature provided that, as to special improvement districts created in the future, a fund shall be created to insure the prompt payment of bonds and warrants issued in payment of such improvements, it but modified the special improvement district law to impose upon the general public, within the municipality, a conditional obligation to pay a small portion of the cost of erecting the public improvement, whereas it might have, lawfully, imposed a much greater burden upon the municipality."

I submit that the General Assembly has adopted a plan, feasible and fair, whereby a most desirable object may be accomplished without offending against any constitutional provision. It is well to remember that all presumptions are in favor of legislative acts, and that courts should not declare them unconstitutional unless their conflict with the Constitution is clear beyond any reasonable doubt.

From an examination of the pertinent statutes and the authorities, it would seem that the remedy of the defendant in error is, not to sue for a money judgment, as was done in this case, but to demand a purchase of his bonds by the municipality and the issuance of a warrant in payment therefor; and if the warrant is not paid and no tax

levy is made to pay the same, to sue in mandamus to compel such levy.

The judgment is wrong and its reversal is proper.

Mr. Justice Bouck concurs herein.