No. 18,769.

L. E. BRADFIELD *v.* PUEBLO AND DUKE W. DUNBAR, ATTORNEY GENERAL OF COLORADO.
(354 P. [2d] 612)

Decided August 8, 1960.

Messrs. SEAVY & SEAVY, for plaintiff in error.

Mr. GORDON D. HINDS, Mr. LEE R. WILLS, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the Court.

THIS action involves the validity of certain ordinances

and city charter provisions relating to the levying, collecting and payment of taxes for a special improvement district within the City of Pueblo.

The parties appear here in the same order as they appeared in the trial court, where, after hearing upon stipulated facts, the court entered its Findings of Facts, Conclusion of Law and Order and Judgment dismissing the complaint.

Pursuant to the authority granted by Sections 7-25 and 7-27 of its charter, the City of Pueblo on October 14, 1955, adopted Ordinance Number 2190, the title of which is:

"AN ORDINANCE CREATING A SPECIAL IMPROVEMENT DISTRICT IN THE CITY OF PUEBLO, COLORADO, TO BE KNOWN AS PUEBLO SPECIAL IMPROVEMENT DISTRICT NO. 55-1, ORDERING THE CONSTRUCTION THEREIN OF STREET IMPROVEMENTS, PROVIDING FOR THE ISSUANCE OF BONDS OF THE DISTRICT TO PAY THE COSTS AND EXPENSES OF SAID IMPROVEMENTS, AND PROVIDING FOR THE PAYMENT OF SUCH BONDS AND INTEREST THEREON."

Subsequently, on November 9, 1955, the City adopted Ordinance Number 2203, the same being a tax levy ordinance which included a two mill tax levy to be used to implement the provisions of Ordinance Number 2190.

It appears that the improvement district in question was for the construction of highways and that part of the cost was assessed against the private landowners residing therein and part of the cost was to be borne by the city itself. The city created a reserve fund by general taxation to pay not only its share but also to "advance" sums necessary to meet any deficiencies which might occur.

Among the pertinent provisions of Ordinance 2190 are the following:

"SECTION 5. * * * local improvement bonds of the City shall be issued for the purpose of paying for the

special improvements in this Ordinance described and provided to be constructed in said Improvement District No. 55-1, in an amount not to exceed the cost of said improvements, * * *.

"SECTION 6. Said bonds * * * shall be payable out of the moneys collected on account of the assessments made for said improvements and from the special funds hereinafter mentioned. * * *.

" * * *.

"SECTION 10. Whenever there is a deficiency in said special improvement district fund to meet the payment of outstanding bonds of this issue and interest thereon, such deficiency shall be paid out of the surplus and deficiency fund of said City, designated in Section 7-26 of the City Charter, and 'Whenever a special or local improvement district has paid and cancelled three-fourths ($\frac{3}{4}$) of its bonds issued, and for any reason the remaining assessments are not paid in time to take up the remaining bonds of the district and interest due thereon, and there is not sufficient money in the special surplus and deficiency fund, then the City shall pay the bonds when due and interest due thereon and reimburse itself by collecting the unpaid assessments due the district.'

"SECTION 11. For the purpose of paying for general benefits conferred on the City at large from the construction of said improvements, for the payment of assessments levied against the City, and for the purpose of advancing money to maintain current payments of interest and equal annual payments of principal of said bonds, the City shall levy annual taxes on the taxable property within the City, or shall annually transfer to a special fund for such purposes any available money of the City, in accordance with Section 7-27 of the City Charter and Ordinance No. 2159 of said City. Immediately after the period allowed for cash payments of assessments in full, such payments shall be applied in the payment of said bonds in regular numerical order. The remaining bonds authorized herein shall be paid in

amounts not less than one-tenth of the principal amount each year, so that all of said bonds and the interest thereon shall be paid in full on or before their maturity date, such payments to be made from assessments and from said special funds as hereinbefore provided."

Plaintiff filed his complaint on December 5, 1955, alleging *inter alia:*

"That the provisions of the Charter of Pueblo reciting that the installation of special improvements confer general benefits upon the City at large in special or local improvement districts and in Section 11 of Ordinance 2190 and purporting thereby to authorize a tax, to pay special improvement assessments on improvements located in one district, on all the property within the corporate limits of Pueblo and not within the boundaries of the district where special improvements are made and for the purpose of advancing money to maintain current payments of interest and equal annual payments of interest and equal annual payments of the principal amount of bonds issued for any special or local improvement district hereafter created are void, illegal, unconstitutional and of no force and effect for the following reasons, to wit:

"(a) That plaintiff is thereby deprived of his property without due process of law;

"(b) That a tax is thereby levied upon plaintiff's property for which no benefit is or can be derived."

It is not urged that Ordinance 2190 violates any other provision of the State or Federal Constitutions than those relating to due process of law. Among the facts stipulated by the parties and followed by the trial court are the following: (1) that plaintiff is the owner of real property within the City of Pueblo, (2) that none of the special improvements are within a radius of eight blocks of plaintiff's property, and (3) that by reason of the taxes levied on account of the special improvements made under Ordinance 2190 the taxes of plaintiff have been raised.

Section 7-25 of the Charter in pertinent part reads:

"The City of Pueblo shall have power to construct or install special or local improvements of every character within designated districts in said City, which improvements shall confer special benefits on the real property within said districts and general benefits to the City at large. * * *."

And Section 7-27 of the Charter states:

"Special or Local Improvement District Bonds — General Benefits — In consideration of general benefits conferred on the City at large from the construction or installation of improvements in special or local improvement districts, the City Council may levy annual taxes on the taxable property within the City, not exceeding two (2) mills in any one year, to be disbursed, as determined by the City Council, for the purpose of paying for such benefits, for the payment of any assessments levied against the City itself in connection with bonds issued for special or local improvement districts, and for the purpose of advancing money to maintain current payments of interest and equal annual payments of the principal amount of bonds issued for any special or local improvement district hereafter created. The proceeds of such taxes shall be placed in a special fund and shall be disbursed only for the purposes specified herein, provided however, that in lieu of such tax levies, the City Council may annually transfer to such special fund any available money of the City, but in no event shall the amount transferred in any one year exceed the amount which would result from a tax levied in such year as herein limited. As long as any bonds issued for special or local improvement districts hereafter organized remain outstanding, the tax levy or equivalent transfer of money to the special fund created for the payment of said bonds shall not be diminished in any succeeding year until all of said bonds and the interest thereon shall be paid in full, unless other available funds are on hand

therefor, or such bonds and interest are paid by the City as required in Section 7-26 of this Part III."

Plaintiff urges as error here:

1. That before a general tax may be imposed upon all of the real property in Pueblo, there *must be a factual determination* that the improvements in "Pueblo Special Improvement District No. 55-1" are of a general benefit to the City at large.

2. That the tax provided for in Section 7-27 of the Charter and in Section 11 of Ordinance No. 2190, and imposed under Ordinance No. 2203, the same being the Tax Levy Ordinance, is unconstitutional for the reason that the City of Pueblo is thereby lending or pledging its credit or faith thereof in aid of private persons, contrary to Section 1, Article XI, of the Colorado Constitution.

It is under plaintiff's first ground of error that he would have us hold that he is being unconstitutionally deprived of his property for two reasons: (a) by having to pay taxes assessed against his lands because of no purported direct benefit to him; and (b) because of alleged impropriety of the city in creating a fund to meet future deficiencies, if any, in bond and interest payments.

We direct our attention first to the question as to whether the general tax here levied is valid because of a claimed lack of "a factual determination that the improvements * * * are of a general benefit to the City at large." Upon reviewing this record and as a matter of law we conclude that the determination of need made by the city in its ordinance to wit: "For the purpose of payment for general benefits conferred on the City at large from the construction of said improvements * * * the City shall levy annual taxes in the taxable property within the City" is an adequate determination of a public need within a proper legislative field by a duly constituted legislative body.

Here it is wise to point out that the bonds in question are in fact those of the City, not of the im-

provement district or of the property owners. The latter is merely a convenient subdivision of the city for construction and special assessment purposes. And, to reiterate what was stated in *Marks v. Mandan* (1941), 70 N.D. 479, 296 N.W. 39, the City could in fact have done this work and paid for all of it out of general city revenues. The latter is so because paving and otherwise improving a city's streets is work of a public nature and benefits the public at large. See *Watson v. Ft. Collins* (1929), 86 Colo. 305, 281 Pac. 355; *Imboden v. City of Bristol* (1915), 132 Tenn. 562, 179 S.W. 147, 148; *Stege v. City of Richmond* (1924), 194 Cal. 305, 228 Pac. 461, 466; and *Stanley v. Jeffries* (1929), 86 Mont. 114, 284 Pac. 134, 138, 70 A.L.R. 166.

■ Next it must be remembered that there is a difference between an assessment by ordinance against a property owner for special benefits and a tax imposed by a city which falls upon all property alike without regard for benefits received. As to the former, notice and hearing are necessary, as to the latter no such demands are valid. *American Co. v. City of Lakeport* (1934), 220 Cal. 548, 32 P. (2d) 622.

■ This is a city tax levied for a general public purpose which plaintiff attacks and which we deem to be fully authorized and valid precisely because it is such a tax for a valid public purpose levied by the admittedly proper authority. Due process of law does not require every taxpayer to be individually consulted relative to the levying of a tax of a general nature upon his property. *Marks,* supra.

Many statutes and ordinances similar to the ones here questioned have been challenged on various constitutional grounds, including lack of due process, both within and without the state of Colorado. The overwhelming weight of authority holds that such statutes and ordinances are not violative of such constitutional provisions, either State or Federal. Most of the early cases dealing with the subject matter have been collected in an

annotation in 135 A.L.R. 1287 entitled "Constitutionality and construction of statute which provides for the use of the general funds or credit of the municipality in event of default or delay in payment of or inability to collect, or insufficiency of, special assessments for total improvements." The author of that annotation reaches the conclusion that:

"Generally, statutes of the type under discussion have been held valid as not violating the Federal Constitution or various provisions of state Constitutions, such as provisions prohibiting the taking of property without due process of law, the gift or loan of public moneys, and the incurring of indebtedness beyond a specified amount."

The better reasoned authorities support this proposition, the rationale of which is amply set forth in *Marks,* supra:

"The various arguments advanced as to the unconstitutionality of a statute requiring the levy of a general tax to meet deficiencies resulting from the failure of special assessment collections lose their virility when we consider that we are dealing with the question of legislative power under the Constitution, in light of the unquestioned fact that the legislature might have provided for the payment of the type of improvement involved in this case by general taxation without notice or hearing as to individual benefits resulting from the improvement. The legislature might have authorized municipalities to incur a general primary indebtedness for the purpose of creating such an improvement. It therefore follows that the legislature may provide for the local improvements to be paid for, in whole or in part, by general taxes, or to be paid primarily by special assessments, with a provision to care for deficiencies by general taxation."

Among other cases cited in the annotation in support of the same proposition and of special interest in the instant case are *Hansen v. Harve* (1941), 112 Mont. 207,

114 P. (2d) 1053, 135 A.L.R. 1278, and *San Diego County v. Hammond* (1936), 6 Cal. (2d) 709, 59 P. (2d) 478, 105 A.L.R. 1155. Additional authorities of interest in connection with this problem are: *Banner v. City of Laramie* (1955), 74 Wyo. 429, 289 P. (2d) 922, and *Hazel Park Nonpartisan Taxpayer Assn. v. Royal Oak Township* (1947), 317 Mich. 607, 27 N.W. (2d) 249. In the latter case, the court considered and rejected several constitutional challenges to the validity of special improvement districts and the collection of taxes on property lying outside thereof for the purpose of paying instalments on certain bonds.

Plaintiff, however, urges that *City of Aurora v. Krauss* (1936), 99 Colo. 12, 59 P. (2d) 79, supports his contention that this particular tax levy is invalid. We have reviewed that case and though its facts are not identical with those of the case before us, some of the language used therein can be construed to support plaintiff's contention. In *Montgomery v. Denver* (1938), 102 Colo. 427, 80 P. (2d) 434, the court refused to apply *Aurora* to the situation then before it, and we also refuse to do so insofar as it is in conflict with our views and holding here, and we expressly overrule it in such instances. We conclude that some of the language of Mr. Justice Butler's dissent in *Aurora* bears repeating here, to wit:

" * * *. The majority take the position that the bonds are debts of the specially benefited property owners. I challenge the correctness of that position. The bonds are not the bonds of the property owners. The property owners are not obligors thereon, and the bondholders cannot sue them thereon any more than they can sue the district.

"What then is the situation? The town undertook a public improvement of benefit to the entire community, though certain property is specially benefited. * * *. The work could have been done at the expense of all of the owners of property in the municipality, and the fact that a special benefit would accrue to abutting property

would not exempt owners of property in a distant part of the municipality from the obligation to pay their share of the general taxes the proceeds of which would be used to pay for the improvements; and in such case the burden resulting from the delinquency of some taxpayers would be borne, at least temporarily, by other taxpayers, for they would have to pay increased taxes until by redemption of property from tax sales, and by the sale of tax certificates acquired by the municipality, the loss would be made up. However, instead of doing the work at the general expense, certain property was assessed to the extent that it was specially benefited by the improvement, and in order to raise funds to do the work the town issued its bonds payable out of the proceeds of the special assessments.

"* * *.

"I submit that the General Assembly has adopted a plan, feasible and fair, whereby a most desirable object may be accomplished without offending against any constitutional provision. It is well to remember that all presumptions are in favor of legislative acts, and that courts do not declare them unconstitutional unless their conflict with the Constitution is clear beyond any reasonable doubt."

In conclusion we turn to the problem of whether the City is lending or pledging its credit in violation of Art. XI, Sec. 1, of the Colorado Constitution which states:

"Neither the state, nor any county, city, town, township or school district shall lend or pledge the credit or faith thereof, directly or indirectly, in any manner, to or in aid of, any person, company, or corporation, public or private, for any amount, or for any purpose whatever; or become responsible for any debt, contract, or liability of any person, company or corporation, public or private, in or out of the state."

Plaintiff cites *Aurora,* supra, correctly as holding that the bond guaranty of the Town there involved was "clearly in effect the lending of the credit of the city in

aid of persons who are defaulting taxpayers and renders the city responsible for their debt, in plain violation of the above constitutional provision."

It is obvious from what we have said and what we have quoted from Mr. Justice Butler's dissent in the *Aurora* decision that the conclusion announced in the majority opinion in *Aurora* was erroneous. The bonds here are those of the City. Art. IX, Sec. 1, cannot be so construed as to keep the state or any subdivision thereof from pledging its own credit for its own debts or obligations as may be permitted by law and as determined by the legislative body in its discretion.

Judgment affirmed.

MR. JUSTICE HALL not participating.